32

United States District Court
Southern District of Texas
FILED

MAY 2 5 2001

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

APOLINAR COMPEAN            *
                            *
VS.                         *        CIVIL ACTION NO. B-00-028
                            *
FORD MOTOR COMPANY          *

## JOINT PRETRIAL ORDER

### 1.    APPEARANCE OF COUNSEL

Counsel for Plaintiffs:

George Powell
State Bar No. 16196000
Federal I.D. No. 3849
HINOJOSA & POWELL
612 Nolana, Suite 410
McAllen, Texas  78504
(956) 686-2413
Fax (956)  686-8462

M. Lloyd Seljos
State Bar No. 18008300
Fed. I.D. No. 983
LAW OFFICE OF M. LLOYD SELJOS
2208 Primrose, Bldg. C
McAllen, Texas 78504
(956) 631-2700
FAX: (956) 631-4975

Counsel for Defendant:

Jaime A. Saenz
State Bar No. 17514859
Federal I.D. No. 7630
Alison Kennamer
State Bar No. 11280400
Federal I.D. No. 12023
RODRIGUEZ, COLVIN & CHANEY, L.L.P.
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
(956) 542-7441
Fax (956) 541-2170

Kurt Kuhn
State Bar No. 24002433
Federal I.D. No. 22915
BROWN, MCCARROLL, OAKS, HARTLINE
111 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 472-5456 Main
Fax (512) 479-1101

## 2.    STATEMENT OF THE CASE

This is a products liability case filed by Apolinar Compean against Ford Motor Company. On January 31, 1998, Mr. Compean was driving his 1993 Ford F-150 pick-up on West Business 77 in San Benito, Texas, when he was struck from the rear by a 1997 Ford Aerostar being driven by Mr. Reynaldo Salinas, Jr. Mr. Compean contends that during the accident, the metal of his driver's seat frame tore, causing his seat to suddenly recline so that his head hit the back window frame of the pick-up truck, injuring his neck. Mr. Compean contends that the driver's side seat in the 1993 Ford F-150 had a design defect which caused the collapse of his seat. Mr. Compean contends that he suffered a herniated disk in his neck as a result of the accident which will require surgery.

Ford contends that the seat in the 1993 Ford F-150 pick-up at issue is not defective. Ford contends that any injuries Mr. Compean suffered in this accident were caused by the actions of Mr. Salinas in hitting Mr. Compean. Ford contends that the physical evidence left on the seat and in the vehicle after the accident demonstrates that the metal of the seat frame did not tear in a way that could cause the seat to collapse, although when seats do collapse in accidents such as this one, this is actually a safety feature of the seat designed to prevent a rigid seat from causing all of the energy forces in an accident to be transmitted directly into the body of the person in that seat. Ford also contends that while Mr. Compean could have suffered some minor back or neck strains or sprains, he did not suffer his herniated disk as a result of this accident, and that Mr. Compean does not have a medical need for surgery.

## 3.    JURISDICTION

This is a civil action with diversity jurisdiction under 28 U.S.C. §1332, in that there is more than $75,000.00 in controversy and the Plaintiff is a resident of Texas and the Defendant a Delaware corporation with its principal place of business in Michigan.

4.   **MOTIONS**

Plaintiff's Motion in Limine.
Defendant's Motion in Limine.

5.   **CONTENTIONS OF THE PARTIES**

**Plaintiff's Contentions:**

Plaintiff contends that the seats in the 1993 Ford F-150 pick-up are defective and that Ford was negligent in its design, manufacture or marketing of the 1993 Ford F-150 vehicle.

Plaintiff contends that the physical evidence left on the seat and in the vehicle after the accident demonstrates that the metal of the seat frame did tear in a way that could cause the seat to collapse.

Plaintiff contends that injuries that he suffered in this accident were caused by the collapse of the seat as a result of it being defective.

Plaintiff contends that he has a medical need for surgery.

Plaintiff contends that Ford should be found liable for any damages in this case.

Plaintiff contends that he has sustained physical pain and/or mental anguish as a result of the injuries sustained in this accident.

Plaintiff contends that he has sustained physical pain and/or mental anguish as a result of the injury sustained in this accident.

Plaintiff contends that he will sustain physical pain and/or mental anguish in the future as a result of the subject accident.

Plaintiff contends that he sustained physical impairment as a result of the injuries sustained in this accident.

Plaintiff contends that he sustained reasonable and necessary medical expenses as a result of injuries sustained in this accident.

Plaintiff contends that he is reasonably likely to incur reasonable and necessary medical expenses in the future as a result of the subject accident.
Plaintiff contends that the delta v was lower than the level at which even by Ford design the seat should have collapsed.

## Defendant's Contentions:

Ford contends that the seats in the 1993 Ford F-150 pick-up are not defective and that it was not negligent in its design, manufacture or marketing of the 1993 Ford F-150 vehicle.

Ford contends that the physical evidence left on the seat and in the vehicle after the accident demonstrates that the metal of the seat frame did not tear in a way that could cause the seat to collapse, although when seats do collapse in accidents such as this one, this is actually a safety feature of the seat designed to prevent a rigid seat from causing all of the energy forces in an accident to be transmitted directly into the body of the person in that seat.

Ford contends that any injuries Mr. Compean suffered in this accident were caused by the negligent actions of Mr. Salinas in hitting Mr. Compean.

Ford contends that while Mr. Compean could have suffered some minor back or neck strains or sprains, he did not suffer his herniated disk as a result of this accident.

Ford contends that Mr. Compean does not have a medical need for surgery.

Ford contends that to the extent Mr. Compean suffered injuries in the accident, his recovery should be reduced to the extent that the jury finds that he was contributorily negligent.

Ford contends that to the extent Mr. Compean suffered injuries in the accident, his recovery should be reduced to the extent that the jury finds that he failed to mitigate his injuries and/or damages.

Ford contends that the provisions of Tex.Civ.Prac. & Rem. Code §33.001 et seq. should be applied to this case, and any recovery against Ford should be reduced by the percentage of negligence attributable to other parties, and to by the applicable settlement credit as to the negligence of Reynaldo Salinas, Jr., a settling person.

Ford specifically denies that it should be found liable for any damages in this case.

Ford contends that Plaintiff has not sustained any physical pain and/or mental anguish in the past that should be the responsibility of Ford.

Ford contends that Plaintiff is not reasonably likely to sustain any physical pain and/or mental anguish in the future as a result of the subject accident, and further, none that should be the responsibility of Ford.

Ford contends that Plaintiff has not sustained any lost wages or lost wage earning capacity in the past and/or future as a result of the occurrence and furture that should be the responsibility of Ford.

Ford contends that Plaintiff has not sustained any physical impairment in the past that should be the responsibility of Ford.

Ford contends that Plaintiff is not reasonably likely to sustain any physical impairment in the future as a result of the subject accident, and further, none that should be the responsibility of Ford.

Ford contends that Plaintiff has not sustained any reasonable and necessary medical expenses in the past that should be the responsibility of Ford.

Ford contends that Plaintiff is not reasonably likely to incur any reasonable and necessary medical expenses in the future as a result of the subject accident, and further, none that should be the responsibility of Ford.

Ford contends that it has not been grossly negligent and that it should not be liable for any punitive/exemplar damages in this case.

Ford contends that it should not be liable for prejudgment interest in this case.

## 6.   ADMISSIONS OF FACT

The parties admit the following:

On January 31, 1998, Mr. Compean was driving his 1993 Ford F-150 pick-up on West Business 77 in San Benito, Texas, when he was struck from the rear by a 1997 Ford Aerostar being driven by Mr. Raynaldo Salinas, Jr.

## 7.   CONTESTED ISSUES OF FACT

### Plaintiff's Contested Issues of Fact:

Whether the DV was below 20.

Whether the car driven by Salinas was traveling at an excessive rate of speed at the time of impact particularly whether it was traveling at 75 miles per hour ad contended by the defendants' expert.

Whether the plaintiff has herniated disc and other spinal injuries as a result of the accident.

The speed of the plaintiff's vehicle will likely be contested.

The extent of deformation and tearing of the seat will be contested.

The plaintiff's damages will be contested.

The apportionment of responsibility for the injuries.

## Defendant's Contested Issues of Fact:

Whether the 1993 Ford F-150 seat structure at issue in this case suffered any deformation that caused it to collapse.

Whether any deformation of the seat structure in a 1993 Ford F-150 which would cause a collapse during a collision event would constitute any evidence of a defect.

Whether there was a design defect in the 1993 Ford F-150 pickup driver's side seat structure at issue that rendered it unreasonably dangerous as designed, taking into consideration the utility of the product and the risks involved in its use.

Whether or not there was a "safer alternative design" available for the 1993 Ford F-150 pickup driver's side seat structure at the time it was designed and manufactured.

Whether any alleged design defect in the seat structure of the 1993 Ford F-150 was a producing cause of the occurrence and/or injuries at issue.

Whether the 1993 Ford F-150 pickup seat structure at issue contains a manufacturing defect.

Whether any alleged manufacturing defect in the seat structure of the 1993 Ford F-150 was a producing cause of any injuries or damages to Plaintiff.

Whether Ford was negligent and failed to exercise ordinary care in either the design or the manufacture of the 1993 Ford F-150 driver's side seat structure in question.

Whether any alleged negligence of Ford was a proximate cause of the occurrence and/or injuries in question.

Whether any acts of alleged negligence of Ford constituted "gross negligence."

Whether and to what extent Plaintiff's claims are barred, in whole or in part, due to any negligence of Plaintiff which was a proximate cause of the occurrence and/or injuries in question.

Whether and to what extent Plaintiff's claims are barred, in whole or in part, due to any negligence of others which was a proximate cause of the occurrence and/or injuries in question, specifically including any negligence of Reynaldo Salinas, Jr.

Whether and to what extent the acts, omissions, or products of (a) person(s) or entity/ies other than Ford was the sole proximate cause, a proximate cause, a contributing cause, and/or a new and independent and/or superseding cause of Plaintiff's alleged injuries and/or damages.

How responsibility should be apportioned in this case.

Whether and, if so, to what extent Plaintiff sustained any injuries and/or damages in the past or will sustain in reasonable probability in the future as a result of the occurrence at issue.

Whether and, if so, to what extent Plaintiff sustained any physical pain and/or mental anguish in the past as a result of the occurrence at issue.

Whether and, if so, to what extent Plaintiff is reasonably likely to sustain any physical pain and/or mental anguish in the future as a result of the occurrence at issue.

Whether and, if so, to what extent Plaintiff sustained any lost wages and/or wage earning capacity in the past as a result of the occurrence at issue.

Whether and, if so, to what extent Plaintiff is reasonably likely to sustain any lost wages and/or wage earning capacity in the future as a result of the occurrence at issue.

Whether and, if so, to what extent Plaintiff sustained any physical impairment in the past as a result of the occurrence at issue.

Whether and, if so, to what extent Plaintiff is reasonably likely to sustain any physical impairment in the future as a result of the occurrence at issue.

Whether and, if so, to what extent Plaintiff sustained any reasonable and necessary medical expenses in the past as a result of the occurrence at issue.

Whether and, if so, to what extent Plaintiff is reasonably likely to sustain any reasonable and necessary medical expenses in the future as a result of the occurrence at issue.

Whether and, if so, to what extent Plaintiff should receive any punitive/exemplar damages in this case.

Whether and to what extent Plaintiff failed to mitigate any injuries and/or damages.

## 9. CONTESTED PROPOSITIONS OF LAW

### Plaintiffs' Contested Propositions of Law:

Whether the defendants' expert Juan Herrera should be allowed to offer testimony because his opinions are based on insufficient evidence to properly form an opinion.

Whether the defendants' expert Richard Harding should be allowed to offer opinion testimony because his opinions are based on insufficient evidence in which to offer a valid opinion.

The plaintiff contends that in this case he does not need an expert as to defect.

Whether the testimony of the defendant's own in-house expert Roger Burnett constitutes an admission of liability.

### Defendant's Contested Propositions of Law:

Whether Plaintiff's failure to name a liability expert means that Plaintiff's case will lack evidence that the seat back failed to perform adequately and therefore, there is no evidence, or in the alternative, insufficient evidence, of a design and/or manufacturing defect in this case to go to the jury. See, Hernandez v. Nissan Motor Corp. in U.S.A., 740 S.W.2d 894 (Tex. App. – El Paso 1987, writ denied).

Whether Plaintiff's failure to name a liability expert means that there is no evidence, or in the alternative, insufficient evidence, of negligence in this case to go to the jury. See, Hernandez v. Nissan Motor Corp. in U.S.A., 740 S.W.2d 894 (Tex. App. – El Paso 1987, writ denied); see also, Hayles v. General Motors Corp., 82 F.Supp. 650 (S.D.Tex. 1999).

Whether Plaintiff's failure to name any experts means that there is no evidence, or in the alternative, insufficient evidence, of causation and damages in this case to go to the jury. See, Hernandez v. Nissan Motor Corp. in U.S.A., 740 S.W.2d 894 (Tex. App. – El Paso 1987, writ denied).

Whether Ford's evidence that the 1993 Ford F-150 is designed to yield to collision forces in order to avoid greater injury to occupants during such collisions means that any collapse of the seat structure cannot, as a matter of law, under any theory of liability, provide sufficient evidence of a defect in this case. See, Higginbotham v. Volkswagenwerk Aktiengesellschaft, 551 F.Supp. 977 (M.D. Pa. 1982), aff'd, 720 F.2d 662 (3rd Cir. 1983) (table) and by 720 F.2d 669 (3rd Cir. 1983) (table) (Pennsylvania law similar to Texas law on this issue).

Whether as a matter of law there was no design defect in the 1993 Ford F-150 pickup driver's side seat structure at issue that rendered it unreasonably dangerous as designed, taking into consideration the utility of the product and the risks involved in its use.

Whether as a matter of law there was no "safer alternative design" available for the 1993 Ford F-150 pickup driver's side seat structure at the time it was designed and manufactured.

Whether as a matter of law there was no design defect in the seat structure of the 1993 Ford F-150 that was a producing cause of the occurrence and/or injuries at issue.

Whether as a matter of law there was no manufacturing defect in the 1993 Ford F-150 pickup seat structure at issue.

Whether as a matter of law there was no manufacturing defect in the seat structure of the 1993 Ford F-150 that was a producing cause of any injuries or damages to Plaintiff.

Whether as a matter of law Ford was not negligent and did not fail to exercise ordinary care in either the design or the manufacture of the 1993 Ford F-150 driver's side seat structure in question.

Whether as a matter of law there was no negligence of Ford that was a proximate cause of the occurrence and/or injuries in question.

Whether as a matter of law there was no alleged negligence of Ford that constituted "gross negligence."

Whether as a matter of law Plaintiff's claims are barred, in whole or in part, due to contributory negligence of Plaintiff which was a proximate cause of the occurrence and/or injuries in question.

Whether as a matter of law Plaintiff's claims are barred, in whole or in part, due to any negligence of others which was a proximate cause of the occurrence and/or injuries in question, specifically including any negligence of Reynaldo Salinas, Jr.

Whether as a matter of law the acts, omissions, or products of (a) person(s) or entity/ies other than Ford was the sole proximate cause, a proximate cause, a contributing cause, and/or a new and independent and/or superseding cause of Plaintiff's alleged injuries and/or damages.

Whether as a matter of law Plaintiff sustained no injuries and/or damages in the past and/or in reasonable probability will sustain no damages in the future as a result of the occurrence at issue.

Whether as a matter of law Plaintiff sustained no physical pain and/or mental anguish in the past as a result of the occurrence at issue for which Ford can be liable.

Whether as a matter of law Plaintiff is reasonably likely to sustain no physical pain and/or mental anguish in the future as a result of the occurrence at issue.

Whether as a matter of law Plaintiff sustained no lost wages and/or wage earning capacity in the past as a result of the occurrence at issue for which Ford can be liable.

Whether as a matter of law Plaintiff is reasonably likely to sustain no lost wages and/or wage earning capacity in the future as a result of the occurrence at issue.

Whether as a matter of law Plaintiff sustained no physical impairment in the past as a result of the occurrence at issue.

Whether as a matter of law Plaintiff is reasonably likely to sustain no physical impairment in the future as a result of the occurrence at issue for which Ford can be liable.

Whether as a matter of law Plaintiff sustained no reasonable and necessary medical expenses in the past as a result of the occurrence at issue.

Whether as a matter of law Plaintiff is reasonably likely to sustain no reasonable and necessary medical expenses in the future as a result of the occurrence at issue.

Whether as a matter of law Plaintiff failed to mitigate any injuries and/or damages.

Whether as a matter of law Ford should not be liable for any punitive/exemplary damages in this case.

## 10.    EXHIBITS

Please see the attached Plaintiffs' Exhibit List, Exhibit "P-1".
Please see the attached Defendant's Exhibit List, Exhibit "D-1".

## 11.    WITNESSES

Please see Plaintiffs' Witness List, Exhibit "P-2".
Please also see Defendant's Witness List, Exhibit "D-2".

12. **TRIAL**

    A.    Probable length of trial; and

            3 - 4 days

    B.    Logistical problems, including availability of witnesses, out-of-state people, bulky exhibits, and demonstrations.

            Defendant states that it has a corporate representative and a number of witnesses who live out of state.

13. **ATTACHMENTS**

Include these required attachments:

    A.    For a jury trial:

        (1)    Proposed questions for the voir dire examination.

                Please see Exhibit "P-3" for Plaintiffs' proposed questions.
                Please see  Exhibit "D-3" for Defendant's proposed questions.

        (2)    Proposed charge, including instructions, definitions, and special interrogatories, with authority.

                Please see  Exhibit "P-4" for Plaintiffs' proposed jury charge.
                Please see  Exhibit "D-4" for Defendant's proposed jury charge.

                Both parties request additional time in which to submit amended proposed jury charges after the evidence has been adduced in the case.

Date: _____

                               _____
                              UNITED STATES DISTRICT JUDGE

Approved:

Date: ___5/25/01___

                               *[signature] George Powell with permission*
                               Attorney-in-charge, Plaintiff

Date: ___5/25/01___

                               *[signature] with permission*
                               Attorney-in-charge, Defendant

# EXHIBIT "P-1"

CVisPDF - www.fastio.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

APOLINAR COMPEAN                 §
                                 §
VS.                              §        CIVIL ACTION NO. B-00-028
                                 §
FORD MOTOR COMPANY               §

## ATTACHMENT "P-1"
## PLAINTIFFS' EXHIBIT LIST

Plaintiff, APOLINAR COMPEAN, presents this list of exhibits  they anticipate offering on the trial of this cause.

Respectfully submitted,

HINOJOSA & POWELL, P.C.
Attorneys at Law
612 Nolana, Suite 410
McAlllen, TX 78504
956/686-2413
956/686-8462 fax


BY: _____
        GEORGE P. POWELL
        Attorney for Plaintiffs
        State Bar No. 16196000
        Fed. Id. No. 3849

| EXHIBIT | MARKED | OFFERED | ADMITTED | REF. |
|---|---|---|---|---|
| Medical Records and Billing Records Harlingen Community Emergency Care Foundation, Inc. 2733 South 77 Sunshine Strip Harlingen, TX 78553 | | | | |
| Medical Records and Billing Records Dolly Vinsant Memorial Hospital P. O. Box 42 San Benito, TX 78586 | | | | |
| Medical Records and Billing Records Valley Radiologists & Associates P. O. Box 2918 Harlingen, TX 78551 | | | | |
| Medical Records and Billing Records Dr. Raul Garza, Jr. 400 W. Highway 77 San Benito, TX 78586 | | | | |
| Medical Records and Billing Records Spectrum Imaging 1016 S. Closner Edinburg, TX 78539 | | | | |
| Medical Records Raul Marquez, M.D. 2402 Cornerstone Blvd. McAllen, TX 78504 | | | | |

| EXHIBIT | MARKED | OFFERED | ADMITTED | REF. |
|---|---|---|---|---|
| Medical Records and Billing Records Salinas Pharmacy 480-A N. Sam Houston, San Benito, Texas 78586 | | | | |
| Medical Records and Billing Records Wal-Mart Pharmacy, 850 W. Highway 77-B, San Benito, TX 78586 | | | | |
| Medical Records and Billing Records Healthsouth-Harlingen, 401 S. Helen Moore Rd., San Benito, TX 78586 | | | | |
| Medical Records and Billing Records Dr. Jorge E. Tijmes P. O. Box 6209 McAllen, TX 78502 | | | | |
| Photographs of Plaintiff's vehicle | | | | |
| Photographs of seat | | | | |
| Crash test videos of Ford vehicles with seats | | | | |

# EXHIBIT "D-1"

CVisPDF – www.fasiso.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| APOLINAR COMPEAN | * |
| | * |
| VS. | *   CIVIL ACTION NO. B-00-028 |
| | * |
| FORD MOTOR COMPANY | * |

## ATTACHMENT "D-1"
## DEFENDANT'S EXHIBIT LIST

| | DESCRIPTION | MARKED | OFFERED | OBJECT | ADMIT | DATE | Disposition after trial |
|---|---|---|---|---|---|---|---|
| 1 | Accident Report | | | | | | |
| 2 | Release of Reynaldo Salinas, Jr. | | | | | | |
| 3 | Reynaldo Salinas, Jr.'s Affidavit | | | | | | |
| 4 | Texas D.O.T. Title History | | | | | | |
| 5 | Border State Auto Insurance Records re Apolinar Medina Compean | | | | | | |
| 6 | Internal Revenue Service Record: U.S. Individual Income Tax Return 1997; Apolinar M. Compean | | | | | | |
| 7 | Internal Revenue Service Record: Certification of Lack of Record for Tax Period Ending December, 1988; Apolinar M. Compean | | | | | | |
| 8 | Internal Revenue Service Record: U.S. Individual Income Tax Return 1999; Apolinar M. Compean | | | | | | |
| 9 | Texas Department of Public Safety Driver's License Record; Apolinar Compean | | | | | | |
| 10 | Driver's License Record of Apolinar Compean | | | | | | |
| 11 | Certified copy of Social Security earnings records: Apolinar Compean | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 12 | Kivett Rodriguez Ford Records | | | | | | |
| 13 | Affidavit/Statement of Geronimo Ramirez (if needed for impeachment) | | | | | | |
| 14 | Dr. Raul Marquez report | | | | | | |
| 15 | Deposition by Written Questions of Dolly Vinsant Memorial Hospital (Medical) | | | | | | |
| 16 | Deposition by Written Questions of Dolly Vinsant Memorial Hospital (Films) | | | | | | |
| 17 | Deposition by Written Questions of Healthsouth Rehab and Sports Medicine (Medical & Films) | | | | | | |
| 18 | Deposition by Written Questions of Raul Garza, Jr., M.D. (Medical & Films) | | | | | | |
| 19 | Deposition by Written Questions of Harlingen Community Emergency Care Foundation (Medical & Films) | | | | | | |
| 20 | Deposition by Written Questions of Valley Radiologists & Associates (Medical) | | | | | | |
| 21 | Deposition by Written Questions of Valley Digestive Disease Associates (Medical & Films) | | | | | | |
| 22 | Deposition by Written Questions of Spectrum Imaging (Medical & Films) | | | | | | |
| 23 | Deposition by Written Questions of Brownsville Medical Center Dept. of Radiology (Films) | | | | | | |
| 24 | Photograph and/or blowup taken by Border Insurance adjuster - No. 1 | | | | | | |
| 25 | Photograph and/or blowup taken by Border Insurance adjuster - No. 2 | | | | | | |
| 26 | Photograph and/or blowup taken by Border Insurance adjuster - No. 3 | | | | | | |
| 27 | Photograph and/or blowup taken by Border Insurance adjuster - No. 4 | | | | | | |
| 28 | Photograph and/or blowup taken by Border Insurance adjuster - No. 5 | | | | | | |

pg. 2

| 29 | Photograph and/or blowup taken by Border Insurance adjuster - No. 6 | | | | | |
|----|---------------------------------------------------------------------|--|--|--|--|--|
| 30 | Photograph and/or blowup taken by Border Insurance adjuster - No. 7 | | | | | |
| 31 | Photograph and/or blowup taken by Border Insurance adjuster - No. 8 | | | | | |
| 32 | Photograph and/or blowup taken by Border Insurance adjuster - No. 9 | | | | | |
| 33 | Photograph and/or blowup taken by Border Insurance adjuster - No. 11 | | | | | |
| 34 | Photograph and/or blowup taken by Border Insurance adjuster - No. 12 | | | | | |
| 35 | Photograph and/or blowup taken by Border Insurance adjuster - No. 13 | | | | | |
| 36 | Photograph and/or blowup taken by Border Insurance adjuster - No. 14 | | | | | |
| 37 | Photograph and/or blowup taken by Border Insurance adjuster - No. 15 | | | | | |
| 38 | Photograph and/or blowup taken by Border Insurance adjuster - No. 16 | | | | | |
| 39 | Photograph and/or blowup taken by Border Insurance adjuster - No. 17 | | | | | |
| 40 | Photograph and/or blowup taken by Border Insurance adjuster - No. 18 | | | | | |
| 41 | Photograph and/or blowup taken by Border Insurance adjuster - No. 19 | | | | | |
| 42 | Photograph and/or blowup taken by Border Insurance adjuster - No. 20 | | | | | |
| 43 | Photograph and/or blowup taken by Border Insurance adjuster - No. 21 | | | | | |
| 44 | Photograph and/or blowup taken by Border Insurance adjuster - No. 22 | | | | | |

| 45 | Photograph and/or blowup taken by Border Insurance adjuster - No. 23 | | | | | | |
|----|---------------------------------------------------------------------|--|--|--|--|--|--|
| 46 | Photograph and/or blowup taken by Border Insurance adjuster - No. 24 | | | | | | |
| 47 | Photograph and/or blowup taken by Border Insurance adjuster - No. 25 | | | | | | |
| 48 | Photograph and/or blowup taken by Border Insurance adjuster - No. 26 | | | | | | |
| 49 | Photograph and/or blowup taken by Border Insurance adjuster - No. 27 | | | | | | |
| 50 | Photograph and/or blowup taken by Border Insurance adjuster - No. 28 | | | | | | |
| 51 | Photograph and/or blowup taken by Border Insurance adjuster - No. 29 | | | | | | |
| 52 | Photograph and/or blowup taken by Border Insurance adjuster - No. 30 | | | | | | |
| 53 | Photograph and/or blowup taken by Border Insurance adjuster - No. 31 | | | | | | |
| 54 | Photograph and/or blowup taken by Border Insurance adjuster - No. 32 | | | | | | |
| 55 | Photograph and/or blowup taken by Border Insurance adjuster - No. 33 | | | | | | |
| 56 | Photograph and/or blowup taken by Border Insurance adjuster - No. 34 | | | | | | |
| 57 | Photograph and/or blowup taken by Border Insurance adjuster - No. 35 | | | | | | |
| 58 | Photograph and/or blowup taken by Border Insurance adjuster - No. 36 | | | | | | |
| 59 | Photograph and/or blowup taken by Border Insurance adjuster - No. 37 | | | | | | |
| 60 | Photograph and/or blowup taken by Border Insurance adjuster - No. 38 | | | | | | |

| 61 | Photograph and/or blowup taken by Border Insurance adjuster - No. 39 | | | | | |
| 62 | Photograph and/or blowup taken by Border Insurance adjuster - No. 40 | | | | · | |
| 63 | Photograph and/or blowup taken by Border Insurance adjuster - No. 41 | | | | | |
| 64 | Photograph and/or blowup taken by Border Insurance adjuster - No. 42 | | | | | |
| 65 | Photograph and/or blowup taken by Border Insurance adjuster - No. 43 | | | · | | |
| 66 | Photograph and/or blowup taken by Border Insurance adjuster - No. 44 | | | | | |
| 67 | Photograph and/or blowup taken by Border Insurance adjuster - No. 45 | | | | | |
| 68 | Photograph and/or blowup taken by Border Insurance adjuster - No. 46 | | | | | |
| 69 | Photograph and/or blowup taken by Border Insurance adjuster - No. 47 | | · | | | |
| 70 | Photograph and/or blowup taken by Border Insurance adjuster - No. 48 | | · | | | |
| 71 | Photograph and/or blowup taken by Border Insurance adjuster - No. 49 | | | | | |
| 72 | Crash test report for test 7972 (rear moving barrier impact at 35.0 +/ .4 mph) (1992 F-150 Supercab) | | | | | |
| 73 | Crash test report for test 9676 (rear moving barrier impact at 35.0 +/ .4 mph) (1996 PN96 Supercab w/ dummies) | | | | | |
| 74 | Seat at issue | | | | | |
| 75 | Disassembled seat cushion frame | | | | | |
| 76 | Disassembled, welded bracket | | | | | |
| 77 | Disassembled top bolt | | | | | |
| 78 | Additional disassembled bolts | | | | | |
| 79 | Disassembled cut portion of bracket | | | | | |

pg. 5

| 80 | Disassembled polished cut-through portion of bracket | | | | | | |
|----|-------------------------------------------------------|--|--|--|--|--|--|
| 81 | Disassembled springs | | | | | | |
| 82 | Exemplar seat | | | | | | |
| 83 | Exemplar seat cushion frame | | | | | | |
| 84 | Exemplar piece of welded steel | | | | | | |
| 85 | Photograph of welded steel | | | | | | |
| 86 | Dr. Richard Harding: Curriculum Vitae | | | | | | |
| 87 | Dr. Richard Harding exhibit - Illustration: Vehicle dynamics with vehicle damage photographs | | | | | | |
| 88 | Dr. Richard Harding exhibit - Illustration:  Occupant kinematics with vehicle inspection photograph | | | | | | |
| 89 | Dr. Richard Harding exhibit - Timeline:  Medical complaints of Mr. Compean | | | | | | |
| 90 | Dr. Richard Harding exhibit - Illustration:  Normal and degenerative lumbar spine segments | | | | | | |
| 91 | Dr. Richard Harding exhibit - Plastic model of lumbar spine | | | | | | |
| 92 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-1 | | | | | | |
| 93 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-2 | | | | | | |
| 94 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-3 | | | | | | |
| 95 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-4 | | | | | | |
| 96 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-5 | | | | | | |
| 97 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-6 | | | | | | |
| 98 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-7 | | | | | | |

pg. 6

| 99 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-8 | | | | | | |
|---|---|---|---|---|---|---|---|
| 100 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-9 | | | | | | |
| 101 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-10 | | | | | | |
| 102 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-11 | | | | | | |
| 103 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-12 | | | | | | |
| 104 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-13 | | | | | | |
| 105 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-14 | | | | | | |
| 106 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-15 | | | | | | |
| 107 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-16 | | | | | | |
| 108 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-17 | | | | | | |
| 109 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-18 | | | | | | |
| 110 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-19 | | | | | | |
| 111 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-20 | | | | | | |
| 112 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-21 | | | | | | |
| 113 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-22 | | | | | | |
| 114 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-23 | | | | | | |

pg. 7

| 115 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-24 | | | | | | |
|-----|------|--|--|--|--|--|--|
| 116 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-25 | | | | | | |
| 117 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-26 | | | | | | |
| 118 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-27 | | | | | | |
| 119 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-28 | | | | | | |
| 120 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-29 | | | | | | |
| 121 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-30 | | | | | | |
| 122 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-31 | | | | | | |
| 123 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-32 | | | | | | |
| 124 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-33 | | | | | | |
| 125 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-34 | | | | | | |
| 126 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-35 | | | | | | |
| 127 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-36 | | | | | | |
| 128 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-1-37 | | | | | | |
| 129 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-2-1 | | | | | | |
| 130 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-2-2 | | | | | | |

| 131 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-2-3 | | | | | | |
|-----|-----|---|---|---|---|---|---|
| 132 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-2-4 | | | | | | |
| 133 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-2-5 | | | | | | |
| 134 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-2-6 | | | | | | |
| 135 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-2-7 | | | | | | |
| 136 | Photograph and/or blowup taken by Richard Harding at vehicle inspection on 01/29/01; RH-2-8 | | | | | | |
| 137 | Juan Herrera: Curriculum Vitae | | | | | | |
| 138 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-1-1 | | | | | | |
| 139 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-1-2 | | | | | | |
| 140 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-1-3 | | | | | | |
| 141 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-1-4 | | | | | | |
| 142 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-1-5 | | | | | | |
| 143 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-1-6 | | | | | | |
| 144 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-1-7 | | | | | | |
| 145 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-1-8 | | | | | | |
| 146 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-1-9 | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 147 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-1-10 | | | | | | |
| 148 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-1-11 | | | | | | |
| 149 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-1-12 | | | | | | |
| 150 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-1-13 | | | | | | |
| 151 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-1-14 | | | | | | |
| 152 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-1-15 | | | | | | |
| 153 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-1-16 | | | | | | |
| 154 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-1-17 | | | | | | |
| 155 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-1-18 | | | | | | |
| 156 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-1-19 | | | | | | |
| 157 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-1-20 | | | | | | |
| 158 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-1-21 | | | | | | |
| 159 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-1-22 | | | | | | |
| 160 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-1-23 | | | | | | |
| 161 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-1-24 | | | | | | |
| 162 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-2-1 | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 163 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-2-2 | | | | | |
| 164 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-2-3 | | | | | |
| 165 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-2-4 | | | | | |
| 166 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-2-5 | | | | | |
| 167 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-2-6 | | | | · | |
| 168 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-2-7 | | | | | |
| 169 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-2-8 | | | | | |
| 170 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-2-9 | | | | | |
| 171 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-2-10 | | | | | |
| 172 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-2-11 | | | | | |
| 173 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-2-12 | | | | | |
| 174 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-2-13 | | | | | |
| 175 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-2-14 | | | | | |
| 176 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-2-15 | | | | | |
| 177 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-2-16 | | | | | |
| 178 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-2-17 | | | | | |

| 179 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-2-18 | | | | | | |
|-----|-------------------------------------------------------------------------------------------|--|--|--|--|--|--|
| 180 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-2-19 | | | | | | |
| 181 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-2-20 | | | | | | |
| 182 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 12/13/00; JH-2-21 | | | | | | |
| 183 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 1) 0190 | | | | | | |
| 184 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 2) 0190 | | | | | | |
| 185 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 3) 0190 | | | | | | |
| 186 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 4) 0190 | | | | | | |
| 187 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 5) 0190 | | | | | | |
| 188 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 6) 0190 | | | | | | |
| 189 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 7) 0190 | | | | | | |
| 190 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 8) 0190 | | | | | | |
| 191 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 9) 0190 | | | | | | |

| 192 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 10) 0190 | | | | | |
|-----|-----|---|---|---|---|---|
| 193 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 11) 0190 | | | | | |
| 194 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 12) 0190 | | | | | |
| 195 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 13) 0190 | | | | | |
| 196 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 14) 0190 | | | | | |
| 197 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 15) 0190 | | | | | |
| 198 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 16) 0190 | | | | | |
| 199 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 17) 0190 | | | | | |
| 200 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 18) 0190 | | | | | |
| 201 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 19) 0190 | | | | | |
| 202 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 20) 0190 | | | | | |
| 203 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 21) 0190 | | | | | |

pg. 13

| | | | | | | |
|---|---|---|---|---|---|---|
| 204 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 22) 0190 | | | | | |
| 205 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 23) 0190 | | | | | |
| 206 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 24) 0190 | | | | | |
| 207 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 1A) 0191 | | | | | |
| 208 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 2A) 0191 | | | | | |
| 209 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 3A) 0191 | | | | | |
| 210 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 4A) 0191 | | | | | |
| 211 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 5A) 0191 | | | | | |
| 212 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 6A) 0191 | | | | | |
| 213 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 7A) 0191 | | | | | |
| 214 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 8A) 0191 | | | | | |
| 215 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 9A) 0191 | | | | | |

| 216 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 10A) 0191 | | | | | | |
|---|---|---|---|---|---|---|---|
| 217 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 11A) 0191 | | | | | | |
| 218 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 12A) 0191 | | | | | | |
| 219 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 13A) 0191 | | | | | | |
| 220 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 14A) 0191 | | | | | | |
| 221 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 15A) 0191 | | | | | | |
| 222 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 16A) 0191 | | | | | | |
| 223 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 17A) 0191 | | | | | | |
| 224 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 18A) 0191 | | | | | | |
| 225 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 19A) 0191 | | | | | | |
| 226 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 20A) 0191 | | | | | | |
| 227 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 21A) 0191 | | | | | | |

pg. 15

| 228 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 22A) 0191 | | | | | |
|-----|---|---|---|---|---|---|
| 229 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 23A) 0191 | | | | | |
| 230 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 24A) 0191 | | | | | |
| 231 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 1) 0193 | | | | | |
| 232 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 2) 0193 | | | | | |
| 233 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 3) 0193 | | | | | |
| 234 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 4) 0193 | | | | | |
| 235 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 5) 0193 | | | | | |
| 236 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 6) 0193 | | | | | |
| 237 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 7) 0193 | | | | | |
| 238 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 8) 0193 | | | | | |
| 239 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 9) 0193 | | | | | |

pg. 16

| 240 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 10) 0193 | | | | | | |
|---|---|---|---|---|---|---|---|
| 241 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 11) 0193 | | | | | | |
| 242 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 12) 0193 | | | | | | |
| 243 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 13) 0193 | | | | | | |
| 244 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 14) 0193 | | | | | | |
| 245 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 15) 0193 | | | | | | |
| 246 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 16) 0193 | | | | | | |
| 247 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 17) 0193 | | | | | | |
| 248 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 18) 0193 | | | | | | |
| 249 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 19) 0193 | | | | | | |
| 250 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 20) 0193 | | | | | | |
| 251 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 21) 0193 | | | | | | |

| 252 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 22) 0193 | | | | | | |
|---|---|---|---|---|---|---|---|
| 253 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 23) 0193 | | | | | | |
| 254 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 24) 0193 | | | | | | |
| 255 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 25) 0193 | | | | | | |
| 256 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 1A) 0194 | | | | | | |
| 257 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 2A) 0194 | | | | | | |
| 258 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 3A) 0194 | | | | | | |
| 259 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 4A) 0194 | | | | | | |
| 260 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 5A) 0194 | | | | | | |
| 261 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 6A) 0194 | | | | | | |
| 262 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 7A) 0194 | | | | | | |
| 263 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 8A) 0194 | | | | | | |

| 264 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 9A) 0194 | | | | | |
|---|---|---|---|---|---|---|
| 265 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 10A) 0194 | | | | | |
| 266 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 11A) 0194 | | | | | |
| 267 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 12A) 0194 | | | | | |
| 268 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 13A) 0194 | | | | | |
| 269 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 14A) 0194 | | | | | |
| 270 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 15A) 0194 | | | | | |
| 271 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 16A) 0194 | | | | | |
| 272 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 17A) 0194 | | | | | |
| 273 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 18A) 0194 | | | | | |
| 274 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 19A) 0194 | | | | | |
| 275 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 20A) 0194 | | | | | |

| 276 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 21A) 0194 | | | | | | |
|-----|-----|---|---|---|---|---|---|
| 277 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 22A) 0194 | | | | | | |
| 278 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 23A) 0194 | | | | | | |
| 279 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 1) 0195 | | | | | | |
| 280 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 2) 0195 | | | | | | |
| 281 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 3) 0195 | | | | | | |
| 282 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 4) 0195 | | | | | | |
| 283 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 5) 0195 | | | | | | |
| 284 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 6) 0195 | | | | | | |
| 285 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 7) 0195 | | | | | | |
| 286 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 8) 0195 | | | | | | |
| 287 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 9) 0195 | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 288 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 10) 0195 | | | | | | |
| 289 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 11) 0195 | | | | | | |
| 290 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 12) 0195 | | | | | | |
| 291 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 13) 0195 | | | | | | |
| 292 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 14) 0195 | | | | | | |
| 293 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 15) 0195 | | | | | | |
| 294 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 16) 0195 | | | | | | |
| 295 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 17) 0195 | | | | | | |
| 296 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 18) 0195 | | | | | | |
| 297 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 19) 0195 | | | | | | |
| 298 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 20) 0195 | | | | | | |
| 299 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 1) 0196 | | | | | | |

| 300 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 2) 0196 | | | | | | |
|-----|------|--|--|--|--|--|--|
| 301 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 3) 0196 | | | | | | |
| 302 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 4) 0196 | | | | | | |
| 303 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 5) 0196 | | | | | | |
| 304 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 6) 0196 | | | | | | |
| 305 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 7) 0196 | | | | | | |
| 306 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 8) 0196 | | | | | | |
| 307 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 9) 0196 | | | | | | |
| 308 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 10) 0196 | | | | | | |
| 309 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 11) 0196 | | | | | | |
| 310 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 12) 0196 | | | | | | |
| 311 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 13) 0196 | | | | | | |

pg. 22

| 312 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 14) 0196 | | | | | |
|-----|-----|---|---|---|---|---|
| 313 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 15) 0196 | | | | | |
| 314 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 16) 0196 | | | | | |
| 315 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 17) 0196 | | | | | |
| 316 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 18) 0196 | | | | | |
| 317 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 19) 0196 | | | | | |
| 318 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 20) 0196 | | | | | |
| 319 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 21) 0196 | | | | | |
| 320 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 22) 0196 | | | | | |
| 321 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 23) 0196 | | | | | |
| 322 | Photograph and/or blowup taken by Juan Herrera at vehicle inspection on 4/26/01 and/or 4/27/01; (No. 24) 0196 | | | | | |
| 323 | Video; Inspection of Seat in McAllen & Houston; 4/26/01-4/27/01; Part 1 | | | | | |

| 324 | Video; Inspection of Seat in McAllen & Houston; 4/26/01-4/27/01; Part 1I | | | | | | |
|-----|---|---|---|---|---|---|---|
| 325 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 884-14-1 | | | | | | |
| 326 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 884-14-2 | | | | | | |
| 327 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 884-14-3 | | | | | | |
| 328 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 884-14-4 | | | | | | |
| 329 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 884-14-5 | | | | | | |
| 330 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 884-14-6 | | | | | | |
| 331 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 884-14-7 | | | | | | |
| 332 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 884-14-8 | | | | | | |
| 333 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 884-14-9 | | | | | | |
| 334 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 884-14-10 | | | | | | |
| 335 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 884-14-11 | | | | | | |

| 336 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 884-14-12 | | | | | | |
|-----|---------------------------------------------------------------------------------------------------------|--|--|--|--|--|--|
| 337 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 884-14-13 | | | | | | |
| 338 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 884-14-14 | | | | | | |
| 339 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 884-14-15 | | | | | . | |
| 340 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 884-14-16 | | | | | | |
| 341 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 884-14-17 | | | | | | |
| 342 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 884-14-18 | | | | | | |
| 343 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 884-14-19 | | | | | | |
| 344 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 884-14-20 | | | | | | |
| 345 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 884-14-21 | | | | | | |
| 346 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 884-14-22 | | | | | | |
| 347 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 884-14-23 | | | | | | |

| 348 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 884-14-24 | | | | | | |
|-----|-----|---|---|---|---|---|---|
| 349 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 885-14-1 | | | | | | |
| 350 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 885-14-2 | | | | | | |
| 351 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 885-14-3 | | | | | | |
| 352 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 885-14-4 | | | | | | |
| 353 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 885-14-5 | | | | | | |
| 354 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 885-14-6 | | | | | | |
| 355 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 885-14-7 | | | | | | |
| 356 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 885-14-8 | | | | | | |
| 357 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 885-14-9 | | | | | | |
| 358 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 885-14-10 | | | | | | |
| 359 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 885-14-11 | | | | | | |

| 360 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 886-14-1 | | | | | | |
|-----|----|---|---|---|---|---|---|
| 361 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 886-14-2 | | | | | | |
| 362 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 886-14-3 | | | | | | |
| 363 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 886-14-4 | | | | | | |
| 364 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 886-14-5 | | | | | | |
| 365 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 886-14-6 | | | | | | |
| 366 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 886-14-7 | | | | | | |
| 367 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 886-14-8 | | | | | | |
| 368 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 886-14-9 | | | | | | |
| 369 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 886-14-10 | | | | | | |
| 370 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 886-14-11 | | | | | | |
| 371 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 886-14-12 | | | | | | |

| 372 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 886-14-13 | | | | | | |
|-----|--------------------------------------------------------------------------------------------------------|--|--|--|--|--|--|
| 373 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 886-14-14 | | | | | | |
| 374 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 886-14-15 | | | | | | |
| 375 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 886-14-16 | | | | | | |
| 376 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 886-14-17 | | | | | | |
| 377 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 886-14-18 | | | | | | |
| 378 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 886-14-19 | | | | | | |
| 379 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 886-14-20 | | | | | | |
| 380 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 886-14-21 | | | | | | |
| 381 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 886-14-22 | | | | | | |
| 382 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 886-14-23 | | | | | | |
| 383 | CD Photograph (regular) and/or blowup taken at Anderson Labs at part inspection on 04/27/01; 886-14-24 | | | | | | |

pg. 28

| 384 | CD Photograph and/or blowup taken at Anderson Labs of part inspection on 04/27/01; 0338-001 | | | | | | |
|-----|-----|---|---|---|---|---|---|
| 385 | CD Photograph and/or blowup taken at Anderson Labs of part inspection on 04/27/01; 0338-0002 | | | | | | |
| 386 | CD Photograph and/or blowup taken at Anderson Labs of part inspection on 04/27/01; 0338-003 | | | | | | |
| 387 | CD Photograph and/or blowup taken at Anderson Labs of part inspection on 04/27/01; 0338-004 | | | | | | |
| 388 | CD Photograph and/or blowup taken at Anderson Labs of part inspection on 04/27/01; 0338-005 | | | | | | |
| 389 | CD Photograph and/or blowup taken at Anderson Labs of part inspection on 04/27/01; 0338-006 | | | | | | |
| 390 | CD Photograph and/or blowup taken at Anderson Labs of part inspection on 04/27/01; DSCF0001 | | | | | | |
| 391 | CD Photograph and/or blowup taken at Anderson Labs of part inspection on 04/27/01; DSCF00002 | | | | | | |
| 392 | CD Photograph and/or blowup taken at Anderson Labs of part inspection on 04/27/01; DSCF0003 | | | | | | |
| 393 | CD Photograph and/or blowup taken at Anderson Labs of part inspection on 04/27/01; DSCF0004 | | | | | | |
| 394 | CD Photograph and/or blowup taken at Anderson Labs of part inspection on 04/27/01; DSCF0005 | | | | | | |
| 395 | CD Photograph and/or blowup taken at Anderson Labs of part inspection on 04/27/01; DSCF0006 | | | | | | |
| 396 | CD Photograph and/or blowup taken at Anderson Labs of part inspection on 04/27/01; DSCF0007 | | | | | | |

| 397 | CD Photograph and/or blowup taken at Anderson Labs of part inspection on 04/27/01; DSCF00008 | | | | | | |
|---|---|---|---|---|---|---|---|
| 398 | CD Photograph and/or blowup taken at Anderson Labs of part inspection on 04/27/01; DSCF0009 | | | | | | |
| 399 | CD Photograph and/or blowup taken at Anderson Lab of part inspection on 04/27/01; Dscf00010 | | | | | | |
| 400 | CD Photograph and/or blowup taken at Anderson Labs of part inspection on 04/27/01; Dscf00011 | | | | . | | |
| 401 | CD Photograph and/or blowup taken at Anderson Labs of part inspection on 04/27/01; Dscf00012 | | | | | | |
| 402 | CD Photograph and/or blowup taken at Anderson Labs of part inspection on 04/27/01; Dscf00013 | . | | | | | |
| 403 | CD Photograph and/or blowup taken at Anderson Labs of part inspection on 04/27/01; Dscf00014 | | | | | | |
| 404 | CD Photograph and/or blowup taken at Anderson Labs of part inspection on 04/27/01; Dscf00015 | | | | | | |
| 405 | CD Photograph and/or blowup taken at Anderson Labs of part inspection on 04/27/01; Dscf00016 | | | | | | . |
| 406 | CD Photograph and/or blowup taken at Anderson Labs of part inspection on 04/27/01; Dscf00017 | | | | | | |
| 407 | CD Photograph and/or blowup taken at Anderson Labs of part inspection on 04/27/01; Dscf000018 | | | | . | | |
| 408 | Roger Burnett: Curriculum Vitae | | | | | | |
| 409 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-1 | | | | | | |

| 410 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-2 | | | | | | |
|-----|-----|---|---|---|---|---|---|
| 411 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-3 | | | | | | |
| 412 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-4 | | | | | | |
| 413 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-5 | | | | | | |
| 414 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-6 | | | | | | |
| 415 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-7 | | | | | | |
| 416 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-8 | | | | | | |
| 417 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-9 | | | | | | |
| 418 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-10 | | | | | | |
| 419 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-11 | | | | | | |
| 420 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-12 | | | | | | |
| 421 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-13 | | | | | | |
| 422 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-14 | | | | | | |
| 423 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-15 | | | | | | |
| 424 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-16 | | | | | | |
| 425 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-17 | | | | | | |

pg. 31

| 426 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-18 | | | | | | |
|-----|----------------------------------------------------------------------------------------|--|--|--|--|--|--|
| 427 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-19 | | | | | | |
| 428 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-20 | | | | | | |
| 429 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-21 | | | | | | |
| 430 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-22 | | | | | | |
| 431 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-23 | | | | | | |
| 432 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-24 | | | | | | |
| 433 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-25 | | | | | | |
| 434 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-26 | | | | | | |
| 435 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-27 | | | | | | |
| 436 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-28 | | | | | | |
| 437 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-29 | | | | | | |
| 438 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-30 | | | | | | |
| 439 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-31 | | | | | | |
| 440 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-32 | | | | | | |
| 441 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-33 | | | | | | |

| 442 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-34 | | | | | . | |
| 443 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-35 | | | | | | |
| 444 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-36 | | | | | | |
| 445 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 1-37 | | | | | | |
| 446 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-1A | | | | . | . | |
| 447 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-2A | | | | | | |
| 448 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-3A | | | | | | |
| 449 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-4A | | | | | | |
| 450 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-5A | | | | | | |
| 451 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-6A | | | | | | |
| 452 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-7A | | | | | | |
| 453 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-8A | | | | | | |
| 454 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-9A | | | | | | |
| 455 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-10A | | | | | | |
| 456 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-11A | | | | | | |
| 457 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-12A | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 458 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-13A | | | | | | |
| 459 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-14A | | | | | | |
| 460 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-15A | | | | | | |
| 461 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-16A | | | | | | |
| 462 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-17A | | | | | | |
| 463 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-18A | | | | | | |
| 464 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-19A | | | | | | |
| 465 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-20A | | | | | | |
| 466 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-21A | | | | | | |
| 467 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-22A | | | | | | |
| 468 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-23A | | | | | | |
| 469 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-24A | | | | | | |
| 470 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-25A | | | | | | |
| 471 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-26A | | | | | | |
| 472 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-27A | | | | | | |
| 473 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-28A | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 474 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-29A | | | | | |
| 475 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-30A | | | | | |
| 476 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-31A | | | | | |
| 477 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-32A | | | | | |
| 478 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-33A | | | | . | |
| 479 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-34A | | | | | |
| 480 | Photograph and/or blowup taken by Roger Burnett at vehicle inspection on 12/13/00; 2-35A | | | | | |
| 481 | Ford Document: PVS - Front Seat System - Dated: November 21, 1987 | | | | | |
| 482 | Ford Document:  Shop Manual section, "Body, Seats and Tracks, Front and Back Seat Latch Removal and Installation, Seat," 2 pp. | | | | | |
| 483 | Ford Document:  Shop Manual section, "Body, Seats and Tracks, Front and Back Latch Removal and Installation, Front Seat Back Adjuster," 1 p. | | | | | |
| 484 | Ford Document:  Shop Manual section, "Body, Seats and Tracks, Front and Back Seat Back Latch Removal and Installation, Front Seat Tracks, Bucket Seat Seat Track to Cushion Assembly," 2 pp. | | | | | |
| 485 | Ford Document:  Shop Manual section, "Body, Seats and Tracks, Front and Seat Back Seat Latch Description and Operation, Diagnosis and Testing," 8 pp. | | | | | |

pg. 35

| 486 | Ford Document: 1992 FMVSS 207  Compliance Documentation Package: #924131 - 1992 FMVSS 207; Dated: 06/26/91 - (MDD 0662) | | | | | | |
|-----|---|---|---|---|---|---|---|
| 487 | Ford Document: 1993 FMVSS 207  Compliance Documentation Package: #934352 - 1993 FMVSS 207; Dated: 03/25/92 - (MDE 0185-0221) | | | | | | |
| 488 | Ford Document: 1993 FMVSS 207  Compliance Documentation Package: #934364 - 1993 FMVSS 207; Dated: 03/31/92 - (MDE 0477-0478) | | | | | | |
| 489 | Ford Document: 1993 FMVSS 207  Compliance Documentation Package: #934515 - 1993 FMVSS 207; Dated: 08/14/92 - (MDE 0481-0486) | | | | | | |
| 490 | Ford Document: 1993 FMVSS 207  Compliance Documentation Package: #934780 - 1993 FMVSS 207; Dated: 02/20/93 - (MDE 0286-1332) | | | | | | |
| 491 | Ford Document: F-Series Seating Package Layout: #DP-F3TK-935214-32000PPAAA, FWD/FACE  2nd Seat F-250 (4x2) split, 1993 F-Series | | | | | | |
| 492 | Ford Document:  Assembly process sheet, TQ5305, latch Ford Document:  Assembly to front seat back frame | | | | | | |
| 493 | Ford Document:  Assembly process Sheet, TQ5380, front seat back to cushion - slide dump | | | | | | |
| 494 | Ford Document: MDS00032320003285 - test report and data for Test Run No. H20555/TC0648 (1985 Escort) | | | | | | |
| 495 | Ford Video:  MDS 3286 - Video of 1985 Escort test, Run No. H20555/TC0648 | | | | | | |

pg. 36

| | | | | | | |
|---|---|---|---|---|---|---|
| 496 | Ford Document: MDS00032870003338 - test report and data for Test Run No. No. H20556/TC0648 (1985 Escort) | | | | | | |
| 497 | Ford Video:  MDS 3339 -Video of 1985 Escort test, Run No. H20556/TC0648 | | | | | | |
| 498 | Ford Document: MDS00033400003388 - test report and data for Test Run No. No. H20557/TC0647 (Sebring test) | | | | | | |
| 499 | Ford Video:  MDS 3389 - Video of Sebring rear impact seat test, Run No. H20557 | | | | | | |
| 500 | Ford Document: MDS00030760003123 - test report and data for Test Run No. H20462/TC0346A (Sebring seat at 30° rear impact test) | | | | | | |
| 501 | Ford Video:  MDS 3124 - Video of 1996 Sebring 30° rear impact test, Run No. H20462 | | | | | | |
| 502 | Ford Document: MDS00027600002815 - test report and data for Test Run No. H20412/TC0346 (Sebring test) | | | | | | |
| 503 | Ford Video:  MDS 2816 - Video of Sebring test, Run No. H20412 | | | | | | |
| 504 | Ford Document: MDS00028670002916 - test report and data for Test Run No. H20425/TC0346 (Mercedes seat test) | | | | | | |
| 505 | Ford Video:  MDS 2917 - Video of Mercedes seat test, Run No. H20425 | | | | | | |
| 506 | Ford Document: MDS00028170002865 - test report and data for Test Run No. H20424/TC0346 (BMW seat test) | | | | | | |
| 507 | Ford Video:  MDS 2866 - Video of BMW seat test, Run No. H20424 | | | | | | |

pg. 37

| 508 | Ford Document: MDS00025190002759 - test report and data for Test Run No. H11633/H39162 (Aerostar rear moving barrier test) | | | | | | |
|---|---|---|---|---|---|---|---|
| 509 | Ford Video:  MDS 2760 - Video of 1987 Aerostar rear moving barrier test, Run No. H11633/ H39162 | | | | | | |
| 510 | Ford Document: MDS00029180002967 - Test report for Test Run No. H20426/ TC0346 (Park Ave. seats) | | | | | | |
| 511 | Ford Video:  MDS 2968 - Video of Park Ave. seat test, Run No. H20426 | | | | | | |
| 512 | Ford Document: MDS00029690003021 - test report and data for Test Run No. H20460/TC0346A (1993 Explorer) | | | | | | |
| 513 | Ford Video:  MDS 3022 - Video of 1993 Ford Explorer seat test, Run No. H20460 | | | | | | |
| 514 | Ford Document: MDS00030230003074 - test report and data for Test Run No. H20461/TC0346A (1991 Explorer) | | | | | | |
| 515 | Ford Video:  MDS 3075 - Video of 1991 Ford Explorer test, Run No. H20461 | | | | | | |
| 516 | Ford Document: MDS00035230003772 - test report and data for Test Run No. H11828 (BMW car-to-car) | | | | | | |
| 517 | Ford Video:  MDS 3773 - Video of 1991 BMW car-to-car test, Run No. H11828 | | | | | | |
| 518 | Ford Document: MDS00019690002177 - test report and data for Test Run No. 11608 (Aerostar rear moving barrier) | | | | | | |
| 519 | Ford Video:  MDS 2178 -  Video of Aerostar rear impact, rear moving barrier test, Run No. 11608 | | | | | | |

pg. 38

| 520 | Ford Document: MDS00021790002368 - test report and data for Test Run No. 116101/TB8671 (Aerostar car-to-car) | | | | | | |
| 521 | Ford Document: MDS00023690002517 - test report and data for Test Run No. 11618/TB8680 car-to-car (1987 Aerostar car-to-car) | | | | | | |
| 522 | Ford Video: MDS 2518 - Video of 1987 Aerostar car-to-car test, Run No. 11618 | | | | | | |
| 523 | Ford Document: MDS00031250003178 - test report and data for Test Run No. 20506/TC0530 (Crown Victoria) | | | | | | |
| 524 | Ford Video: MDS 3179 - Video of Crown Victoria HYGE sled test, Run No. H20506 | | | | | | |
| 525 | Ford Document: MDS00031800003230 - test report and data for Test Run No. 20507/TB0530 (Crown Victoria) | | | | | | |
| 526 | Ford Video: MDS 3231 - Video of Crown Victoria HYGE sled test, Run No. H20507 | | | | | | |
| 527 | Ford Document: 820000039240003931 - Charts from Escort seat tests | | | | | | |
| 528 | Ford Video: 8200 3921, TZ6029, Test Run Video, Run Nos. 16776, 16777, 16778, 16779, 16780, 16781 (Escort tests) | | | | | | |
| 529 | Ford Document: 820000123550012398 - HYGE Sled Test Summary: Run No. H16776 | | | | | | |
| 530 | Ford Document: 820000123990012442 - HYGE Sled Test Summary: Run No. H16777 | | | | | | |
| 531 | Ford Document: 820000124430012486 - HYGE Sled Test Summary: Run No. H16778 | | | | | | |

pg. 39

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 532 | Ford Document: 820000124870012530 - HYGE Sled Test Summary: Run No. H16779 | | | | | | |
| 533 | Ford Document: 820000123110012354 - HYGE Sled Test Summary: Run No. H16780 | | | | | | |
| 534 | Ford Document: 820000122670012310 - HYGE Sled Test Summary: Run No. H16781 | | | | | | |
| 535 | Ford Document: 820000039310003961 - H14338 Test data (DN5/Taurus) | | | | | · | |
| 536 | Ford Document: 820000039620003991 - H14337 Test data (DN5/Taurus) | | | | | | |
| 537 | Ford Document: 820000039920004022 - H14336 Test data (DN5/Taurus) | | | | | | |
| 538 | Ford Document: 820000040230004054 - H14335 Test data (DN5/Taurus) | | | | | | |
| 539 | Ford Document: 820000040550004084 - H14334 Test data (DN5/Taurus) | | | | | | |
| 540 | Ford Video: 820100130960013096 - DN101 Test Video: Runs T25557, T25883, T26029, T26050 | | | | | | |
| 541 | Ford Document: 820000044320004437 - Chart of neck forces in DN5 crash tests (Taurus) | | | | | | |
| 542 | Ford Document: 820000044380004440 - Summary of DN5 crash test data (Taurus) | | | | | | |
| 543 | Ford Document: 820000041860004188 - Tests data | | | | | | |
| 544 | Ford Document: 820000041800004182 - Chart of neck forces in various tests | | | | | | |
| 545 | Ford Document: 820000041830004185 - Chart of neck Y-moments in various tests | | | | | | |

pg. 40

| | | | | | | |
|---|---|---|---|---|---|---|
| 546 | Ford Document: 8200 4469 - NASS injury data | | | | | |
| 547 | Ford Document: 820000044700004471 - FARS fatality data | | | | | |
| 548 | Ford Document: 8200 4474 - Seat belt effectiveness data | | | | | |
| 549 | Ford Document: 820000112220011239 - HYGE testing photographs; H14331-337; T-25557; | | | | | |
| 550 | Ford Document: 820000112400011267 - Test Data; H14331; Avet Rear Impact Madymo Model Devel. | | | | | |
| 551 | Ford Document: 820000112680011297 - Test Data; H14332; Avet Rear Impact Madymo Model Devel. | | | | | |
| 552 | Ford Document: 820000114680011496 - Test Data; H14332; Avet Rear Impact Madymo Model Devel. | | | | | |
| 553 | Ford Document: 820000112980011326 - Test Data; H14333; Avet Rear Impact Madymo Model Devel. | | | | | |
| 554 | Ford Document: 820000114970011542 - Test Data; H14333; Avet Rear Impact Madymo Model Devel. | | | | | |
| 555 | Ford Document: 820000113270011354 - Test Data; H14334; Avet Rear Impact Madymo Model Devel. | | | | | |
| 556 | Ford Document: 820000113850011411 - Test Data; H14335; Avet Rear Impact Madymo Model Devel. | | | | | |
| 557 | Ford Document: 820000113550011384- Test Data; H14336; Avet Rear Impact Madymo Model Devel. | | | | | |
| 558 | Ford Document: 820000114120011439 - Test Data; H14337; Avet Rear Impact Madymo Model Devel. | | | | | |

| 559 | Ford Document: 820000114400011467 - Test Data; H14338; Avet Rear Impact Madymo Model Devel. | | | | | | |
|---|---|---|---|---|---|---|---|
| 560 | Ford Document: 820000115250011553 - Test Data; H14336; Avet Rear Impact Madymo Model Devel. | | | | | | |
| 561 | Ford Document:  Portions of the Truck Facts Book(s) pertaining to the driver's bucket seats in 1993 F150/F250/F350 Supercab | | | | | | |
| 562 | Ford Document: Engineering Specification: #ES-E2EB-58608A14-AA - frame assembly - front seat back (low-back and high-back bucket), Dated: 07/12/83 | | | | | • | |
| 563 | Ford Document: Engineering Specification: #ES-C5AB-10944-A - seat cushion and back spring assemblies load deflection specification, Dated: 07/29/70 | | | | | | |
| 564 | Ford Document: Engineering Specification: #ES-E4EB-1K251-AA - Spot, projection and fillet welds, Dated: 10/17/83 | | | | | | |
| 565 | Ford Document: Engineering Specification: #ES-E1EB-616808A14-AE - Frame assembly - front seat back(low-back and high-back bucket), Dated: 05/01/81 | | | | | | |
| 566 | Ford Document: Engineering Specification: #ESB-M1A215-C1 - (Material) - Steel (HSS) cold rolled HSLA sheet, fully killed, Dated: 03/11/80 | | | | | | |
| 567 | Ford Document: Engineering Specification: #ES-D8AB-1294-AA - Sheet metal drawing notes, Dated: 02/23/82 | | | | | | |
| 568 | Ford Document: Engineering Specification: #ES-D3AB-11007-AA - Sheet surfaces and edges, Dated: 06/21/80 | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 569 | Ford Document: Engineering Specification: #ES-E6DB-54608A14-A - Frame assembly front seat, Dated: 05/23/90 | | | | | | |
| 570 | Ford Document: Engineering Specification: #ES-E67B-9862648-AA - Latch assembly front seat back; Dated: 10/19/87 | | | | | | |
| 571 | Ford Document: Engineering Specification: #ES-E67B-1362506-AA - Passenger seat support (dump slide), Dated: 03/23/85 | | | | | | |
| 572 | Ford Document: Engineering Specification: #ES-E4EB-1A252-AA - Resistance projection welding - weld fasteners (nuts, bolts, pins), Dated: 11/24/82 | | | | • | | |
| 573 | Ford Document: Engineering Specification: #EA-M2P13-A - Paint quality, coil springs | | | | | | |
| 574 | Ford Document: Engineered Drawings: #F2TB-9861018-AB - Frame assembly front seat back, Dated: 01/08/97 - 7 frames | | | | | | |
| 575 | Ford Document: Engineered Drawings: #E77-9862648-AA - Latch assembly front seat back, Dated: 08/10/87 - 1 pg. | | | | | | |
| 576 | Ford Document: Engineered Drawings: #F2TB-1860094-AA - Support assembly driver, Dated: 10/28/92 -3 frames | | | | | | |
| 577 | Ford Document: Engineered Drawings: #F2TB-9861018-AB - Frame assembly front seat back, Dated: 02/27/96 - 7 frames | | | | | | |
| 578 | Ford Document: Engineered Drawings: #E83B-5463100-BA - Spring assembly front seat cushion, Dated: 07/07/91 - 4 frames | | | | | | |
| 579 | Ford Document: Engineered Drawings: #F1TB-1862506-AB - Support assembly passenger, Dated: 12/05/90 - 3 frames | | | | | | |

pg. 43

| 580 | Ford Document: Engineered Drawings: #F1TB-9862649-AA - Latch assembly front seat back (LH), Dated: 07/16/94 - 1 Sheet | | | | | | |
|---|---|---|---|---|---|---|---|
| 581 | Ford Document: Engineered Drawings: #F3TB-9862648-AA - Latch assembly front seat back, Dated: 07/23/91 - 1 pg. | | | | | | |
| 582 | Ford Document: Engineered Drawings: #F4TB-1860094-AA - Support assembly driver, Dated: 9/28/93 -3 frames | | | | | | |
| 583 | Ford Document: Engineered Drawings: #F1TB-1862506-AA - Support assembly passenger, Dated: 12/05/90 - 3 frames | | | | . | | |
| 584 | Ford Document: Engineered Drawings: #F2TB-9861018-AB - Frame assembly front seat back, Dated: 03/17/93 - 7 frames | | | | | | |
| 585 | Ford Document: Engineering Test Procedures: #SM-15 - Seat anchorage tests; Dated: 03/31/88 | | | | | | |
| 586 | Ford Document: Engineering Test Procedures: #ST-4 - Seat acceleration test; Dated: 02/26/87 | | | | | | |
| 587 | Ford Document: #1.00-165 - Engineering Design Standards - Seating systems; Dated: 04/29/91 | | | | | | |
| 588 | Ford Document: Worldwide Product Acceptance Specifications - (WPAS) - Body; Dated: 06/15/90 | | | | | | |
| 589 | Ford Document: Ford Worldwide Quality System Standard Q-101 1990 | | | | | | , |
| 590 | Ford Document: Mandatory Compliance Inspection Report | | | | | | |
| 591 | Ford Document: Warranty Information Booklet, 1993 - Model Ford and Mercury Cars and Light Trucks | | | | | | |
| 592 | Ford Document: Installation Sketches: Front Seat Cover Designs, T2T-801, Sheets 1–3 | | | | | | |

| 593 | Ford Document:  Installation Sketches:  Front Seat Cushion Spring and Pad (Bucket) T2T-818 | | | | | | |
|-----|-----|---|---|---|---|---|---|
| 594 | Ford Document:  Installation Sketches:  Front Seat Cushion Cover (Bucket) T2T-819 | | | | | | |
| 595 | Ford Document:  Installation Sketches:  Front Seat Back Pad and Latch, T2T-837 | | | | | | |
| 596 | Ford Document:  Installation Sketches:  Front Seat Back Cover, T2T-840 | | | | | | |
| 597 | Ford Document:  Installation Sketches:  Front Seat Back Head Rest,  T2D-855 | | | | | | |
| 598 | Ford Document:  Installation Sketches:  Front Seat Support Assembly to Seat Cushion, T2T-862 | | | | | | |
| 599 | Ford Document:  Installation Sketches:  Front Seat Back Latch Cover,  TOT-863 | | | | | | |
| 600 | Ford Document:  Installation Sketches:  Front Seat Cushion Spring and Pad (Bucket), T5T-818 | | | | | | |
| 601 | Ford Document:  Installation Sketches:  Front Seat Cushion Cover (Bucket) T5T-819 | | | | | | |
| 602 | Ford Document:  Installation Sketches:  Front Seat Back Pad and Latch, T5T-837 | | | | | | |
| 603 | Ford Document:  Installation Sketches:  Front Seat Back to Cushion (Bucket), T5T-855 | | | | | | |
| 604 | Ford Document:  Installation Sketches:  Front Seat Support Assembly to Seat Cushion, T5T-862 | | | | | | |
| 605 | Ford Document:  Installation Sketches:  Front Seat Back Latch Cover,  T5T-863 | | | | | | |

| 606 | Ford Document:  Installation Sketches:  Front Seat Support to Floor (Bucket & Captain's), T5T-864-S | | | | | | |
|-----|------|---|---|---|---|---|---|
| 607 | Ford Document:  Installation Sketches:  Front Seat Cushion Spring and Pad, T6T-818 | | | | | | |
| 608 | Ford Document:  Installation Sketches:  Front Seat Cushion Cover (Bucket) T6T-819 | | | | | | |
| 609 | Ford Document:  Installation Sketches:  Front Seat Back Pad and Latch, T6T-837 | | | | | · | |
| 610 | Ford Document:  Installation Sketches:  Front Seat Back Cover Assembly, T6T-840 | | | | | | |
| 611 | Ford Document:  Installation Sketches:  Front Seat to Cushion (Bucket),  T6T-855 | | | | | | |
| 612 | Ford Document:  Installation Sketches:  Front Seat Support Assembly to Seat Cushion, T6T-862 | | | | | | |
| 613 | Ford Document:  Installation Sketches:  Front Seat Back Latch Cover,  T6T-863 | | | | | | |
| 614 | Ford Document:  BUH 00077180007755 - HYGE Sled Test Summary: Run No. H19182 | | | | | | |
| 615 | Ford Document:  BUH 00077560007796 - HYGE Sled Test Summary: Run No. H19183 | | | | | | |
| 616 | Ford Document:  BUH 00077970007798 -   Test Order (3/5/98) | | | | | | |
| 617 | Ford Document:  BUH 00077990007866- HYGE Sled Test Summary: Run No. H19097 | | | | | | |
| 618 | Ford Document:  BUH 00078670007930 HYGE Sled Test Summary: Run No. H19098 | | | | | | |
| 619 | Ford Document:  BUH 00079310007994 - HYGE Sled Test Summary: Run No. H19099 | | | | | | |

pg. 46

| 620 | Ford Document: BUH 00079950008058 - HYGE Sled Test Summary: Run No. H19100 | | | | | | |
|-----|-----|---|---|---|---|---|---|
| 621 | Ford Document: BUH 00080590008125 - HYGE Sled Test Summary: Run No. H19101 | | | | | | |
| 622 | Ford Document: BUH 00081260008166 - HYGE Sled Test Summary: Run No. H19081 | | | | | | |
| 623 | Ford Document: BUH 00081670008203 - HYGE Sled Test Summary: Run No. H19082 | | | | | | |
| 624 | Ford Document: BUH 00082040008240 - HYGE Sled Test Summary: Run No. H19083 | | | | • | | |
| 625 | Ford Document: BUH 00082410008277 - HYGE Sled Test Summary: Run No. H19084 | | | | | | |
| 626 | Ford Document: BUH 00082780008314 - HYGE Sled Test Summary: Run No. H19085 | | | | | | |
| 627 | Ford Document: BUH 00083150008351 - HYGE Sled Test Summary: Run No. H19086 | | | | | | |
| 628 | Ford Document: BUH 00083520008390 - HYGE Sled Test Summary: Run No. H19087 | | | | | | |
| 629 | Ford Document: BUH 00083910008429 - HYGE Sled Test Summary: Run No. H19088 | | | | | | |
| 630 | Ford Document: BUH 00084300008468 - HYGE Sled Test Summary: Run No. H19089 | | | | | | |
| 631 | Ford Document: BUH 00084690008472 - Test Order for evaluation of performance of competitive seats in rear impact (Sebrings), (8/1/97) | | | | | | |
| 632 | Ford Document: BUH 00084730008510 - HYGE Sled Test Summary: Run No. H19349 | | | | | | |
| 633 | Ford Document: BUH 00085110008548 - HYGE Sled Test Summary: Run No. H19350 | | | | | | |
| 634 | Ford Document: BUH 00085490008586 - HYGE Sled Test Summary: Run No. H19351 | | | | | | |

pg. 47

| 635 | Ford Document: BUH 00085870008624 - HYGE Sled Test Summary: Run No. H19352 | | | | | | |
|-----|---|---|---|---|---|---|---|
| 636 | Ford Document: BUH 00086250008662 - Run No. H19354; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
| 637 | Ford Document: BUH 00086630008701 - HYGE Sled Test Summary: Run No. H19353 | | | | | | |
| 638 | Ford Document: BUH 00087020008739 - HYGE Sled Test Summary: Run No. H19355 | | | | | | |
| 639 | Ford Document: BUH 00087400008778 - HYGE Sled Test Summary: Run No. H19356 | | | | | | |
| 640 | Ford Document: BUH 00087790008784 - Test Order No.TA9690 for evaluations of Autoliv seats | | | | | | |
| 641 | Ford Video: BUH 00087850008785 -Video; H19182-83, 19097-101, 19081-089, 19349-345 | | | | | | |
| 642 | Ford Video:: H19081-19101 - Test Run Video | | | | | | |
| 643 | Ford Video: H1918--19183 - Test Run Video | | | | | | |
| 644 | Ford Video: H19349-19350 - Test Run Video | | | | | | |
| 645 | 8200 4192 - Test series video (Continental) | | | | | | |
| 646 | Ford Document: 820000087760008776 - Econoline Test Order (5/30/96) | | | | | | |
| 647 | Ford Document: 820000087770008805 - HYGE Sled Test Summary: Run No. H17452 | | | | | | |
| 648 | Ford Document: 820000088060008834 - HYGE Sled Test Summary: Run No. H17453 | | | | | | |
| 649 | Ford Document: 820000088350008863 - HYGE Sled Test Summary: Run No. H17454 | | | | | | |

| 650 | Ford Document: 820000088640008892 - HYGE Sled Test Summary: Run No. H17455 | | | | | | |
|---|---|---|---|---|---|---|---|
| 651 | Ford Document: 820000088930008921 - HYGE Sled Test Summary: Run No. H17456 | | | | | | |
| 652 | Ford Document: 820000089220008950 - HYGE Sled Test Summary: Run No. H17457 | | | | | | |
| 653 | Ford Document: 820000089510008979 - HYGE Sled Test Summary: Run No. H17458 | | | | · | | |
| 654 | Ford Document: 820000089800009008- HYGE Sled Test Summary: Run No. H17459 | | | | | | |
| 655 | Ford Document: 820000090090009034- HYGE testing photographs; Run Nos. H17453-456 | | | | | | |
| 656 | Ford Document: 820000090350009057 - T–26053; Rear Impact Seat Eval.,, Test Order Instructions | | | | | | |
| 657 | Ford Document: 820000090580009063 - HYGE Sled Test Summary: Run No. H17452 | | | | | | |
| 658 | Ford Document: 820000090640009070 - HYGE Sled Test Summary: Run No. H17453 | | | | | | |
| 659 | Ford Document: 820000090710009076 - HYGE Sled Test Summary: Run No. H17454 | | | | | | |
| 660 | Ford Document: 820000090770009082 - HYGE Sled Test Summary: Run No. H17455 | | | | | | |
| 661 | Ford Document: 820000090830009088 - HYGE Sled Test Summary: Run No. H17456 | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 662 | Ford Document: 820000090890009094 - HYGE Sled Test Summary: Run No. H17457 | | | | | |
| 663 | Ford Document: 820000090950009100 - HYGE Sled Test Summary: Run No. H17458 | | | | | |
| 664 | Ford Document: 820000091010009107 - HYGE Sled Test Summary: Run No. H17459 | | | | | |
| 665 | Ford Document: 820000091080009110- Econoline test data (5/30/96); H17109-17112) | | | | | |
| 666 | Ford Document: 820000091110009114 - Test data; Run Nos. H16773-16978; H16885, H16883, H16976, H16974 | | | | | |
| 667 | Ford Document: 820000091150009116 - HYGE Sled Test Summary: Run No. H17113 | | | | | |
| 668 | Ford Document: 820000091170009117- HYGE Dummy Positioning and Target Sheet; Run No. H17114 | | | | | |
| 669 | Ford Document: 820000091180009119 - HYGE Sled Test Summary: Run No. H17109 | | | | | |
| 670 | Ford Document: 820000091200009123 - HYGE Sled Test Summary: Run Nos. H17110; H17111 | | | | | |
| 671 | Ford Document: 820000091240009125 - HYGE Sled Test Summary: Run No. H17112 | | | | | |
| 672 | Ford Document: 820000091260009126 - HYGE Dummy Positioning and Target Sheet; Run No. H17115 | | | | | |

pg. 50

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 673 | Ford Document: 820000091270009128 - HYGE Sled Test Summary: Run No. H17098 | | | | | | |
| 674 | Ford Document: 820000091290009130 - HYGE Sled Test Summary: Run No. H17099 | | | | | | |
| 675 | Ford Document: 820000091310009132- HYGE Sled Test Summary: Run No. H17100 | | | | | | |
| 676 | Ford Document: 820000091330009134 - HYGE Sled Test Summary: Run No. H17101 | | | | . | | |
| 677 | Ford Document: 820000091350009136 - HYGE Sled Test Summary: Run No. H17102 | | | | | | |
| 678 | Ford Document: 820000091370009138 - HYGE Sled Test Summary: Run No. H17103 | | | | | | |
| 679 | Ford Document: 820000091390009140 - HYGE Sled Test Summary: Run No. H17104 | | | | | | |
| 680 | Ford Document: 820000091410009142 - HYGE Sled Test Summary: Run No. H17105 | | | | | | |
| 681 | Ford Document: 820000091430009144 - HYGE Sled Test Summary: Run No. H17106 | | | | | | |
| 682 | Ford Document: 820000091450009146 - HYGE Sled Test Summary: Run No. H17107 | | | | | | |
| 683 | Ford Document: 820000091470009148 - HYGE Sled Test Summary: Run No. H17108 | | | | | | |
| 684 | Ford Document: 820000091490009149 - Test Order (8/3/95) | | | | | | |

| 685 | Ford Document: 820000091500009150- CR8404; accelerometer reading | | | | | | |
|-----|---------------------------------------------------------------------|---|---|---|---|---|---|
| 686 | Ford Document: 820000091510009151 - Indicated Dummy and Seat Targets | | | | | | |
| 687 | Ford Document: 820000091520009152 - Test data; drawing | | | | | | |
| 688 | Ford Document: 820000091530009153 - CR8404; accelerometer reading | | | | | | |
| 689 | Ford Document: 820000091540009154 - HYGE Dummy JIS; T–26053; Starcraft Rear Impact | | | | • | | |
| 690 | Ford Document: 820000091550009157 - Instrumentation Setup Sheet Report; T-26053 | | | | | | |
| 691 | Ford Document: 820000091580009158 - Test data  (1/10/96) | | | | | | |
| 692 | Ford Document: 820000091590009159 - Test data; T-26053 | | | | | | |
| 693 | Ford Document: 820000091600009160 - T–26053; HYGE Test Series Hardware Level List | | | | | | |
| 694 | Ford Document: 820000091610009162 - T–26053; Test Instrumentation Request Sheet | | | | | | |
| 695 | Ford Document: 820000091630009165 - H16883, H17099; accelerometer readings | | | | | | |
| 696 | Ford Document: 820000091660009166- Test data; H16885 | | | | | | |
| 697 | Ford Document: 820000091670009168 - 11/17/95; Test matrix & instrumentation list for Hybrids | | | | | | |

CVisPDF – www.fastio.com

| 698 | Ford Document: 820000091690009176 - T–26053; HYGE - Firing Parameters Sheet; Test Data H16974, H16976, H16883, | | | | | | |
|-----|------|---|---|---|---|---|---|
| 699 | Ford Document: 820000091770009179 - Test Order T-26053; Starcraft (Econoline) Seat Rear Impact Evaluation | | | | | | |
| 700 | Ford Document: 820000091800009181 - Injury Assessment Reference Values | | | | | | |
| 701 | Ford Document:  820000091Ford Document:  820009183 - Test data; BMW seats, Starcraft Seats | | | | | · | |
| 702 | Ford Document: 820000091840009211 - HYGE Sled Test Summary: Run No. H17111 | | | | | | |
| 703 | Ford Document: 820000092120009239 - HYGE Sled Test Summary: Run No. H17110 | | | | | | |
| 704 | Ford Document: 820000092400009267 - HYGE Sled Test Summary: Run No. H17109 | | | | | | |
| 705 | Ford Document: 820000092680009295 - HYGE Sled Test Summary: Run No. H17108 | | | | | | |
| 706 | Ford Document: 820000092960009323- HYGE Sled Test Summary: Run No. H17107 | | | | | | |
| 707 | Ford Document: 820000093240009351 - HYGE Sled Test Summary: Run No. H17106 | | | | | | |
| 708 | Ford Document: 820000093520009379 - HYGE Sled Test Summary: Run No. H17105 | | | | | · | |
| 709 | Ford Document: 820000093800009407 - HYGE Sled Test Summary: Run No. H17104 | | | | | | |

CNMPDF - www.Nsisio.com

| | | | | | | |
|---|---|---|---|---|---|---|
| 710 | Ford Document: 820000094080009435 - HYGE Sled Test Summary: Run No. H17103 | | | | | |
| 711 | Ford Document: 820000094360009463 - HYGE Sled Test Summary: Run No. H17102 | | | | | |
| 712 | Ford Document: 820000094640009491 - HYGE Sled Test Summary: Run No. H17101 | | | | | |
| 713 | Ford Document: 820000094920009539 - HYGE Sled Test Summary: Run No. H17100 | | | | . | |
| 714 | Ford Document: 820000095400009587 - HYGE Sled Test Summary: Run No. H17099 | | | | | |
| 715 | Ford Document: 820000095880009635 - HYGE Sled Test Summary: Run No. H17098 | | | | | |
| 716 | Ford Document: 820000096360009653- Run No. H16969, accelerometer readings | | | | | |
| 717 | Ford Document: 820000096540009671 - Run No. H16970, accelerometer readings | | | | | |
| 718 | Ford Document: 820000096720009682 - Run No. H16969, T-26103; dummy positioning; accelerometer readings | | | | | |
| 719 | Ford Document: 820000096830009687 - Test Order No. T-26103; DN5 Rear Impact Evaluation; Matrix | | | | | |
| 720 | Ford Document: 820000096880009699 - T–26103; Test Order Instructions (buck prep checklist) | | | | | |
| 721 | Ford Document: 820000097000009702 - HYGE testing photographs; CN315940, CN316017, CN315940 | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 722 | Ford Document: 820000097030009708 - Test data, T-26103; Run Nos. H16278 - H16666 | | | | | | |
| 723 | Ford Document: 820000097090009713 - Test data, T-26103; Run Nos. H16278 - H16666 | | | | | | |
| 724 | Ford Document: 820000097140009722 - Test data, T-26123; DN101/Volvo Rear Impact Eval.; HYGE Run Nos. H17174-176 | | | | | | |
| 725 | Ford Document: 820000097230009727 - T–26123; Test Order Instructions | | | | • | | |
| 726 | Ford Document: 820000097280009747- HYGE Sled Test Summary, T-26123; HYGE Dummy Positioning and Targeting Sheet; Run Nos. H17174-191 | | | | | | |
| 727 | Ford Document: 820000097480009749 - HYGE Sled Test Summary: Run No. H17429 | | | | | | |
| 728 | Ford Document: 820000097500009751 - HYGE Sled Test Summary: Run No. H17434 | | | | | | |
| 729 | Ford Document: 820000097520009753 - HYGE Sled Test Summary: Run No. H17435 | | | | | | |
| 730 | Ford Document: 820000097540009754 - HYGE Sled Test Summary: Run No. H17436 | | | | | | |
| 731 | Ford Document: 820000097550009756 - HYGE Sled Test Summary: Run No. H17437 | | | | | | |
| 732 | Ford Document: 820000097570009758 - HYGE Sled Test Summary: Run No. H17438 | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 733 | Ford Document: 820000097590009760 - HYGE Sled Test Summary: Run No. H17439 | | | | | |
| 734 | Ford Document: 820000097610009762 - HYGE Sled Test Summary: Run No. H17440 | | | | | |
| 735 | Ford Document: 820000097630009764 - HYGE Sled Test Summary: Run No. H17430 | | | | | |
| 736 | Ford Document: 820000097650009766- HYGE Sled Test Summary: Run No. H17431 | | | | . | |
| 737 | Ford Document: 820000097670009768 - HYGE Sled Test Summary: Run No. H17432 | | | | | |
| 738 | Ford Document: 820000097690009770 - HYGE Sled Test Summary: Run No. H17433 | | | | | |
| 739 | Ford Document: 820000097710009772 - HYGE Sled Test Summary: Run No. H17441 | | | | | |
| 740 | Ford Document: 820000097730009774 - HYGE Sled Test Summary: Run No. H17442 | | | | | |
| 741 | Ford Document: 820000097750010213 - Run No. H17174-191, H17429- 442; accelerometer readings | | | | | |
| 742 | Ford Document: 820000102140010215 - HYGE testing photographs; CN319059 | | | | | |
| 743 | Ford Document: 820000102160010221 - Test Order T-26204; Pedestrian Pelvis Evaluation | | | | | |
| 744 | Ford Document: 820000102220010225 - Test Order T-26204; test order instructions | | | | | |

pg. 56

CSilPDF - www.tevisa.com

| 745 | Ford Document: 820000102260010228 - T–26204; instrumentation/ photograph request sheets | | | | | |
|------|------|------|------|------|------|------|
| 746 | Ford Document: 820000102290010236 - Test data, T-26204; Run Nos. H16628-632; H16969 -970 | | | | | |
| 747 | Ford Document: 820000102370010264 - HYGE Sled Test Summary: Run No. H17533 | | | | | |
| 748 | Ford Document: 820000102650010292 - HYGE Sled Test Summary: Run No. H17534 | | | | . | |
| 749 | Ford Document: 820000102930010320 - HYGE Sled Test Summary: Run No. H17535 | | | | | |
| 750 | Ford Document: 8200001032100010348- HYGE Sled Test Summary: Run No. H17536 | | | | | |
| 751 | Ford Document: 820000103490010417 - HYGE Testing Photographs (1-10 thru 1-12-96 (Dr. Prasad); H17098-115 | | | | | |
| 752 | Ford Document: 820000104180010436 - HYGE testing photographs; H16278-285 | | | | | |
| 753 | Ford Document: 820000115540011581 - Test Data; H14338; Avet Rear Impact Madymo Model Devel. | | | | | |
| 754 | Ford Document:  820000115Ford Document:  820011586 - Test Data; H14335; Output Reports | | | | | |
| 755 | Ford Document: 820000115870011591 - Test Data; H14333; Output Reports | | | | | |
| 756 | Ford Document: 820000115920011621- Test Data; H15689 | | | | | |
| 757 | Ford Document: 820000116230011649 - HYGE 15689; Photographs | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 758 | Ford Document: 820000116500011660 - T–25883; Rear Impact Neck Eval.; Computation Report; H16278 | | | | | | |
| 759 | Ford Document: 820000116610011693 - Test data; Rear Impact Neck Eval.; H16282; H14332; H16628-632 | | | | | | |
| 760 | Ford Document: 820000116940011712 - HYGE Testing Photographs; H16278-285 | | | | | | |
| 761 | Ford Document: 820000117130011809 - T–25883; Rear Impact Neck Evaluation | | | | | • | |
| 762 | Ford Document: 820000118100012089 - HYGE Run Nos. H16628-632; H16278-285; H16665-666; accelerometer readings | | | | | | |
| 763 | Ford Document: 820000120900012133 - HYGE Sled Test Summary: Run No. H16785 | | | | | | |
| 764 | Ford Document: 820000121340012177 - HYGE Sled Test Summary: Run No. H16784 | | | | | | |
| 765 | Ford Document: 820000121780012221- HYGE Sled Test Summary: Run No. H16783 | | | | | | |
| 766 | Ford Document: 820000122220012266 - HYGE Sled Test Summary: Run No. H16782 | | | | | | |
| 767 | Ford Document: 820000125310012548 - Test data; T-26049; H16974-976 | | | | | | |
| 768 | Ford Document: 820000125490012552 - Test data; handwritten notes, drawing | | | | | | |
| 769 | Ford Document: 820000125530012604- HYGE Sled Test Summary: Run No. H16885 | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 770 | Ford Document: 820000126050012646 - HYGE Sled Test Summary: Run No. H16876 | | | | | |
| 771 | Ford Document: 820000126470012698 - HYGE Sled Test Summary: Run No. H16886 | | | | | |
| 772 | Ford Document: 820000126990012740 - HYGE Sled Test Summary: Run No. H16877 | | | | | |
| 773 | Ford Document: 820000127410012787 - HYGE Sled Test Summary: Run No. H16878 | | | | . | |
| 774 | Ford Document: 820000127880012934 - HYGE Sled Test Summary: Run No. H16879 | | | | | |
| 775 | Ford Document: 820000128350012886 - HYGE Sled Test Summary: Run No. H16880 | | | | | |
| 776 | Ford Document: 820000128870012938 - HYGE Sled Test Summary: Run No. H16881 | | | | | |
| 777 | Ford Document: 820000129390012990 - HYGE Sled Test Summary: Run No. H16882 | | | | | |
| 778 | Ford Document: 820000129910013042 - HYGE Sled Test Summary: Run No. H16883 | | | | | |
| 779 | Ford Document: 820000130430013095- HYGE Sled Test Summary: Run No. H16884 | | | | | |
| 780 | Ford Video:  8200 13097 - DN101 Test Video: Runs T26050 cont'd., T26103, T26049, T26053 | | | | | |
| 781 | Ford Video:  8200 13098 - DN101 Test Video: Runs T26053 cont'd., T26123 | | | | | |

pg. 59

| 782 | Ford Video:  8200 13099- DN101 Test Video: Runs T26123 cont'd., T26053, T26204 | | | | | | |
|-----|--------------------------------------|--|--|--|--|--|--|
| 783 | Ford Video:  8200 13100 - HYGE Runs H17099- H17101 | | | | | | |
| 784 | Ford Video:  8200 13101 - Video; HYGE Runs H17107-H17108 | | | | | | |
| 785 | Ford Video:   8200 13102 - HYGE Runs H17123- H17124 | | | | | | |
| 786 | Ford Video:: 8200 13103 - HYGE Runs H17099- H17102 | | | | | | |
| 787 | Ford Video:  8200 13104 - HYGE Runs H17109- H17112 | | | | | | |
| 788 | Ford Video:  8200 13108 - Video; HYGE Nos. 17113-17115 | | | | | | |
| 789 | Ford Document: 820000142950014325- Test data; Rear Impact Seat Eval.; T–26053; H17112 | | | | | | |
| 790 | Ford Document: 820000143260014356 - Test data; Rear Impact Seat Eval.; T–26053; H17113 | | | | | | |
| 791 | Ford Document: 820000143570014387 - Test data; Rear Impact Seat Eval.; T–26053; H17114 | | | | | | |
| 792 | Ford Document: 820000144190014420 - HYGE Testing Photographs; H17115 | | | | | | |
| 793 | 820100008580000861 - Test Order No. TA2920 for evaluation of RID model neck | | | | | | |
| 794 | Ford Document: 820100008620000889 - HYGE Sled Test Summary: Run No. H18359 | | | | | | |
| 795 | Ford Document: 820100008900000917 - HYGE Sled Test Summary: Run No. H18360 | | | | | | |
| 796 | Ford Document: 820100009180000945 - HYGE Sled Test Summary: Run No. H18361 | | | | | | |

CNPDF - www.fsino.com

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 797 | Ford Document: 820100009460000973 - HYGE Sled Test Summary: Run No. H18362 | | | | | | |
| 798 | Ford Document: 820100009740001001 - HYGE Sled Test Summary: Run No. H18363 | | | | | | |
| 799 | Ford Document: 820100010020001029 - HYGE Sled Test Summary: Run No. H18364 | | | | | | |
| 800 | Ford Document: 820100010300001055 - HYGE testing photographs; H18360 - H18364 | | | | | . | |
| 801 | Ford Document: 820100010560001060 - Test Order No. TA3885 for evaluation FN74 seats (Continental) | | | | | | |
| 802 | Ford Document: 820100010610001093 - HYGE Sled Test Summary: Run No. H18507 | | | | | | |
| 803 | Ford Document: 820100010940001126 - HYGE Sled Test Summary: Run No. H18508 | | | | | | |
| 804 | Ford Document: 820100011270001159 - HYGE Sled Test Summary: Run No. H18509 | | | | | | |
| 805 | Ford Document: 820100011600001192 - HYGE Sled Test Summary: Run No. H18510 | | | | | | |
| 806 | Ford Document: 820100011930001225 - HYGE Sled Test Summary: Run No. H18511 | | | | | | |
| 807 | Ford Document: 820100012260001258 - HYGE Sled Test Summary: Run No. H18512 | | | | | | |
| 808 | Ford Document: 820100012590001291 - HYGE Sled Test Summary: Run No. H18513 | | | | | | |

CNPDF - www.Nsino.com

| 809 | Ford Document: 820100012920001324 - HYGE Sled Test Summary: Run No. H18514 | | | | | | |
| 810 | Ford Document: 820100013250001367 - HYGE testing photographs;  H18507 - 514 | | | | | | |
| 811 | Ford Document: 820100016750001690 - Final Test Report; Run Nos. H18469 - 472 | | | | | | |
| 812 | Ford Document: 820100016910001725 - Final Test Report; Run Nos. H18413 - 422 | | | | | | |
| 813 | Ford Document: 820100017260001747 - Final Test Report; Run Nos. H18359 - 364 | | | | | | |
| 814 | Ford Document: 820100017480001766 - Final Test Report; Run No. H18300 - 304 | | | | | | |
| 815 | Ford Document: 820100017670001798 - Final Test Report; Run Nos. H18233 - 241 | | | | | | |
| 816 | Ford Document: 820100017990001818 - Final Test Report; Run Nos. H18056 - 060 | | | | | | |
| 817 | Ford Document: 820100018190001837 - Final Test Report; Run Nos. H14331 - 338 | | | | | | |
| 818 | Ford Document: 820100018380001843 - Final Test Report; Run Nos. H16974- 976, H18219-225 | | | | | | |
| 819 | Ford Document: 820100018440001889 - Final Test Report; Run Nos. H16278- 285, H16628-632, H16665-666 | | | | | | |
| 820 | Ford Document: 820100019170001982 - Final Test Report; Run Nos. H17174- 191, H17429-442 | | | | | | |

pg. 62

| 821 | Ford Document: 820100019830002005 - Final Test Report; Run Nos. H18062 - 065 | | | | | | |
|-----|---|---|---|---|---|---|---|
| 822 | Ford Document: 820100020060002022 - Final Test Report; Run Nos. H18122, H18123 | | | | | | |
| 823 | Ford Document: 820100020230002042 - Final Test Report; Run Nos. H18214 - 218 | | | | | | |
| 824 | Ford Document: 820100020430002059 - Final Test Report; Run Nos. H18409 - 412 | | | | . | | |
| 825 | Ford Document: 820100020630002078 - Final Test Report; Run Nos. H17533 - 536 | | | | | | |
| 826 | Ford Document: 820100020790002103 - Final Test Report; Run Nos. H17653 - 662 | | | | | | |
| 827 | Ford Document: 820100021040002130 - Final Test Report; Run Nos. H18507 - 514 | | | | | | |
| 828 | Ford Document: 820100021310002158 - Final Test Report; Run Nos. H17877 - 884 | | | | | | |
| 829 | Ford Document: 820100021590002194 - Final Test Report; Run Nos. H16876 - 886 | | | | | | |
| 830 | Ford Document: 820100021950002217 - Final Test Report; Run Nos. H16969-970, H18062-065 | | | | | | |
| 831 | Ford Document: 820100022180002233 - Final Test Report; Run Nos. H17783 - 788 | | | | | | |
| 832 | Ford Document: 820100022340002237 - Test Order No. TA2779 for evaluation of TNO RID model necks | | | | | | |

| 833 | Ford Document: 820100022380002287 - HYGE Sled Test Summary: Run No. H18413 | | | | | | |
|---|---|---|---|---|---|---|---|
| 834 | Ford Document: 820100022880002337 - HYGE Sled Test Summary: Run No. H18414 | | | | | | |
| 835 | Ford Document: 820100023380002387 - HYGE Sled Test Summary: Run No. H18415 | | | | | | |
| 836 | Ford Document: 820100023880002435 - HYGE Sled Test Summary: Run No. H18416 | | | | · | | |
| 837 | Ford Document: 820100024360002484 - HYGE Sled Test Summary: Run No. H18417 | | | | | | |
| 838 | Ford Document: 820100024850002534 - HYGE Sled Test Summary: Run No. H18418 | | | | | | |
| 839 | Ford Document: 820100025350002583 - HYGE Sled Test Summary: Run No. H18419 | | | | | | |
| 840 | Ford Document: 820100025840002633 - HYGE Sled Test Summary: Run No. H18420 | | | | | | |
| 841 | Ford Document: 820100026340002683 - HYGE Sled Test Summary: Run No. H18421 | | | | | | |
| 842 | Ford Document: 820100026840002733 - HYGE Sled Test Summary: Run No. H18422 | | | | | | |
| 843 | Ford Document: 820100027340002780 - HYGE testing photographs; H18413-H18422 | | | | | | |
| 844 | Ford Document: 820100027810002785 - Test Request No. TA1454 for evaluation of European seats | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 845 | Ford Document: 820100027860002814 - HYGE Sled Test Summary: Run No. H18233 | | | | | | |
| 846 | Ford Document: 820100028150002843 - HYGE Sled Test Summary: Run No. H18234 | | | | | | |
| 847 | Ford Document: 820100028440002872 - HYGE Sled Test Summary: Run No. H18235 | | | | | | |
| 848 | Ford Document: 820100028730002901 - HYGE Sled Test Summary: Run No. H18236 | | | | · | | |
| 849 | Ford Document: 820100029020002930 - HYGE Sled Test Summary: Run No. H18237 | | | | | | |
| 850 | Ford Document: 820100029310002958 - HYGE Sled Test Summary: Run No. H18238 | | | | | | |
| 851 | Ford Document: 820100029590002986 - HYGE Sled Test Summary: Run No. H18239 | | | | | | |
| 852 | Ford Document: 820100029870003014 - HYGE Sled Test Summary: Run No. H18240 | | | | | | |
| 853 | Ford Document: 820100030150003042 - HYGE Sled Test Summary: Run No. H18241 | | | | | | |
| 854 | Ford Document: 820100030430003054 - HYGE testing photographs;  H18233-H18241 | | | | | | |
| 855 | Ford Document: 820100030550003057 - Test Order No. TA3964 for evaluation of CDW 162 seats | | | | | | |
| 856 | Ford Document: 820100030580003092 - HYGE Sled Test Summary: Run No. H18469 | | | | | | |

| 857 | Ford Document: 820100030930003127 - HYGE Sled Test Summary: Run No. H18470 | | | | | | |
|-----|------|---|---|---|---|---|---|
| 858 | Ford Document: 820100031280003162 - HYGE Sled Test Summary: Run No. H18471 | | | | | | |
| 859 | Ford Document: 820100031630003197 - HYGE Sled Test Summary: Run No. H18472 | | | | | | |
| 860 | Ford Document: 820100031980003217 - HYGE testing photographs; H18469-H18472 | | | | | · | |
| 861 | Ford Document: 820100032180003222 - Test Order No. TA1553 for evaluation of CDW 162 seats | | | | | | |
| 862 | Ford Document: 820100032230003271 - HYGE Sled Test Summary: Run No. H18300 | | | | | | |
| 863 | Ford Document: 820100032720003319 - HYGE Sled Test Summary: Run No. H18301 | | | | | | |
| 864 | Ford Document: 820100033200003366 - HYGE Sled Test Summary: Run No. H18302 | | | · | | | |
| 865 | Ford Document: 820100033670003414 - HYGE Sled Test Summary: Run No. H18303 | | | | | | |
| 866 | Ford Document: 820100034150003464 - HYGE Sled Test Summary: Run No. H18304 | | | | | | |
| 867 | Ford Document: 820100034650003489 - HYGE testing photographs; H18300-H18304 | | | | | | |

pg. 66

| 868 | Ford Document: 820100034900003507 - HYGE testing photographs; Rear Impact EVA; T26029; Run Nos. H16776 - 785 | | | | | | |
|---|---|---|---|---|---|---|---|
| 869 | Ford Document: 820100035080003511 - HYGE testing photographs;  Generic Rear Impact EVA; T26103; Run Nos. H16969 - 70 | | | | | | |
| 870 | Ford Document: 820100035120003516 - HYGE testing photographs; Run Nos. H18062-65 | | | | | . | |
| 871 | Ford Document: 820100035170003530 - HYGE testing photographs; DN101 Rear Impact Evaluation EVA; T26050; Run Nos. H16876-86 | | | | | | |
| 872 | Ford Document: 820100035320003535 - Test Order No. TA2777 for evaluation of CT120 seats (Escort) | | | | | | |
| 873 | Ford Document: 820100035360003585 - HYGE Sled Test Summary: Run No. H18409 | | | | | | |
| 874 | Ford Document: 820100035860003634 - HYGE Sled Test Summary: Run No. H18410 | | | | | | |
| 875 | Ford Document: 820100036350003683 - HYGE Sled Test Summary: Run No. H18411 | | | | | | |
| 876 | Ford Document: 820100036840003733 - HYGE Sled Test Summary: Run No. H18412 | | | | | | |
| 877 | Ford Document: 820100037340003753 - HYGE testing photographs; Run Nos. H18409 - 412 | | | | | | |
| 878 | Ford Document: 820100041410004212 - Run No. H16282; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |

CM-PDF - www.fooio.com

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 879 | Ford Document: 820100042130004276 - Run No. H16283; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
| 880 | Ford Document: 820100042770004332 - Run No. H16284; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
| 881 | Ford Document: 820100043330004400 - Run No. H16284 - 85; accelerometer readings | | | | | | |
| 882 | Ford Document: 820100044010004410 - Rear Impact Neck EVA; T25883; Run Nos. H16278 - 85 | | | | | | |
| 883 | Ford Document: 820100044110004471 - Run No. H16628; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
| 884 | Ford Document: 820100044720004532 - Run No. H16629; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
| 885 | Ford Document: 820100045330004595 - Run No. H16630; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
| 886 | Ford Document: 820100045960004681 - Run No. H16631; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
| 887 | Ford Document: 820100046820004763 - Run No. H16632; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
| 888 | Ford Document: 820100047640004809 - Run No. H16665; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |

| 889 | Ford Document: 820100048100004855 - Run No. H16666; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
| 890 | Ford Document: 820100048560004864 - HYGE testing photographs; Run Nos. H16628-632; H16665-666 | | | | | | |
| 891 | Ford Document: 820100048650004892 - HYGE Sled Test Summary: Run No. H17533 | | | | | | |
| 892 | Ford Document: 820100048930004920 - HYGE Sled Test Summary: Run No. H17534 | | | | • | | |
| 893 | Ford Document: 820100049210004948 - HYGE Sled Test Summary: Run No. H17535 | | | | | | |
| 894 | Ford Document: 820100049490004976 - HYGE Sled Test Summary: Run No. H17536 | | | | | | |
| 895 | Ford Document: 820100049770004978 - Test Order No. TA26123 for evaluation of Taurus and Volvo seats | | | | | | |
| 896 | Ford Document: 820100049790005032 - HYGE Sled Test Summary: Run No. H17429 | | | | | | |
| 897 | Ford Document: 820100050330005083 - HYGE Sled Test Summary: Run No. H17430 | | | | | | |
| 898 | Ford Document: 820100050840005134 - HYGE Sled Test Summary: Run No. H17431 | | | | | | |
| 899 | Ford Document: 820100051350005169 - HYGE Sled Test Summary: Run No. H17432 | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 900 | Ford Document: 820100051700005204 - HYGE Sled Test Summary: Run No. H17433 | | | | | | |
| 901 | Ford Document: 820100052050005258 - HYGE Sled Test Summary: Run No. H17434 | | | | | | |
| 902 | Ford Document: 820100052590005288 - HYGE Sled Test Summary: Run No. H17435 | | | | | | |
| 903 | Ford Document: 820100052890005299 - HYGE Sled Test Summary: Run No. H17436 | | | | · | | |
| 904 | Ford Document: 820100053000005333 - HYGE Sled Test Summary: Run No. H17437 | | | | | | |
| 905 | Ford Document: 820100053340005367 - HYGE Sled Test Summary: Run No. H17438 | | | | | | |
| 906 | Ford Document: 820100053680005401 - HYGE Sled Test Summary: Run No. H17439 | | | | | | |
| 907 | Ford Document: 820100054020005435 - HYGE Sled Test Summary: Run No. H17440 | | | | | | |
| 908 | Ford Document: 820100054360005474 - HYGE Sled Test Summary: Run No. H17441 | | | | | | |
| 909 | Ford Document: 820100054750005513 - HYGE Sled Test Summary: Run No. H17442 | | | | | | |
| 910 | Ford Document: 820100055140005529 - HYGE testing photographs: Run Nos. H17429-442 | | | | | | |

| 911 | Ford Document: 820100055300005582 - Run No. H17174; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
|-----|-----|---|---|---|---|---|---|
| 912 | Ford Document: 820100055830005636 - Run No. H17175; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
| 913 | Ford Document: 820100053670005690- Run No. H17176; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
| 914 | Ford Document: 820100056910005743 - Run No. H17177; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
| 915 | Ford Document: 820100057440005798 - Run No. H17178; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
| 916 | Ford Document: 820100057990005852 - Run No. H17179; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
| 917 | Ford Document: 820100058530005906 - Run No. H17180; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
| 918 | Ford Document: 820100059070005941 - Run No. H17181; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
| 919 | Ford Document: 820100059420005976 - Run No. H17182; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |

pg. 71

| 920 | Ford Document: 820100005977006011 - Run No. H17183; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
|-----|---|---|---|---|---|---|---|
| 921 | Ford Document: 820100006012006046 - Run No. H17184; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
| 922 | Ford Document: 820100006047006081 - T Run No. H17185; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | . | | |
| 923 | Ford Document: 820100006082006116- Run No. H17186; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
| 924 | Ford Document: 820100006117006151 - Run No. H17187; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
| 925 | Ford Document: 820100006152006186 - Run No. H17188; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
| 926 | Ford Document: 820100006187006219 - Run No. H17189; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
| 927 | Ford Document: 820100006220006252 - Run No. H17190; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | . | | | | |
| 928 | Ford Document: 820100006253006285 - Run No. H17191; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
| 929 | Ford Document: 820100006286006306 - HYGE testing photographs; Run Nos. H17174-191 | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 930 | Ford Document: 820100063070006334 - HYGE Sled Test Summary: Run No. H17783 | | | | | | |
| 931 | Ford Document: 820100063350006362 - HYGE Sled Test Summary: Run No. H17784 | | | • | | • | |
| 932 | Ford Document: 820100063630006390 - HYGE Sled Test Summary: Run No. 17785 | | | | | | |
| 933 | Ford Document: 820100063910006418 - HYGE Sled Test Summary: Run No. H17786 | | | | • | | |
| 934 | Ford Document: 820100064190006446 - HYGE Sled Test Summary: Run No. H17787 | | | | | | |
| 935 | Ford Document: 820100064470006489 - HYGE Sled Test Summary: Run No. H17788 | | | | | | |
| 936 | Ford Document: 820100064900006538 - HYGE Sled Test Summary: Run No. H18062 | | | | | | |
| 937 | Ford Document: 820100065390006587 - HYGE Sled Test Summary: Run No. H18063 | | | | | | |
| 938 | Ford Document: 820100065880006636 - HYGE Sled Test Summary: Run No. H18064 | | | | | | |
| 939 | Ford Document: 820100066370006685 - HYGE Sled Test Summary: Run No. H18065 | | • | | | | |
| 940 | Ford Document: 820100066860006738 - HYGE Sled Test Summary: Run No. H18214 | | | | | | |
| 941 | Ford Document: 820100067390006796 - HYGE Sled Test Summary: Run No. H18215 | | | | | | |

pg. 73

| | | | | | | |
|---|---|---|---|---|---|---|
| 942 | Ford Document: 820100067970006855 - HYGE Sled Test Summary: Run No. H18216 | | | | | |
| 943 | Ford Document: 820100068560006888 - HYGE Sled Test Summary: Run No. H18217 | | | | | |
| 944 | Ford Document: 820100068890006921 - HYGE Sled Test Summary: Run No. H18218 | | | | | |
| 945 | Ford Document: 820100069220006981 - HYGE Sled Test Summary: Run No. H18122 | | | | · | |
| 946 | Ford Document: 820100069820007041 - HYGE Sled Test Summary: Run No. H18123 | | | | | |
| 947 | Ford Document: 820100070420007091 - HYGE Sled Test Summary: Run No. H18056 | | | | | |
| 948 | Ford Document: 820100070920007141 - HYGE Sled Test Summary: Run No. H18057 | | | | | |
| 949 | Ford Document: 820100071420007170 - HYGE Sled Test Summary: Run No. H18058 | | | | | |
| 950 | Ford Document: 820100071710007200 - HYGE Sled Test Summary: Run No. H18059 | | | | | |
| 951 | Ford Document: 820100072010007229 - HYGE Sled Test Summary: Run No. H18060 | | | | | |
| 952 | Ford Document: 820100072300007258 - HYGE testing photographs; Rear Impact Seat Eval.; Run Nos. H18214-218 | | | | | |

| 953 | Ford Document: 820100072590007277 - HYGE testing photographs; DN101 Head Restraint Eval. In Rear Impact; Run Nos. H18122-123 | | | | | | |
| 954 | Ford Document: 820100072780007295 - HYGE testing photographs; Pedestrain Pelvis Rear Impact Eval.; Run Nos. H17533-536 | | | | | | |
| 955 | Ford Document: 820100073440007371 - HYGE testing photographs; CDW27 Rear Impact Dummy Eval.; Run Nos.  H18056-060 | | | | | | |
| 956 | Ford Document: 820100073720007401 - HYGE testing photographs; Mercedes Rear Impact, Run Nos.  H17782-787 | | | | | | |
| 957 | Ford Document: 820100074020007454 - Run No. H15200; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
| 958 | Ford Document: 820100074550007502 - HYGE Sled Test Summary: Run No. H18219 | | | | | | |
| 959 | Ford Document: 820100075030007550 - HYGE Sled Test Summary: Run No. H18220 | | | | | | |
| 960 | Ford Document: 820100075510007598 - HYGE Sled Test Summary: Run No. H18221 | | | | | | |
| 961 | Ford Document: 820100075990007646 - HYGE Sled Test Summary: Run No. H18222 | | | | | | |
| 962 | Ford Document: 820100076470007694 - HYGE Sled Test Summary: Run No. H18223 | | | | | | |

| 963 | Ford Document: 820100076950007742 - HYGE Sled Test Summary: Run No. H18224 | | | | | | |
|---|---|---|---|---|---|---|---|
| 964 | Ford Document: 820100077430007790- HYGE Sled Test Summary: Run No. H18225 | | | | | | |
| 965 | Ford Document: 820100077910007800 - Run Nos. H18218-225 | | | | | | |
| 966 | Ford Document: 820100078010007848 - HYGE Sled Test Summary: Run No. H16974 | | | | | | |
| 967 | Ford Document: 820100078490007896 - HYGE Sled Test Summary: Run No. H16975 | | | | | | |
| 968 | Ford Document: 820100078970007943 - Run No. H16976; HYGE Dummy Positioning and Target Sheet; accelerometer readings | | | | | | |
| 969 | Ford Document: 820100079480007950 - Test Order for evaluation of Hybrid 3 dummy pedestrian pelvis (11/8/96) | | | | | | |
| 970 | Ford Document: 820100079510007979- HYGE Sled Test Summary: Run No. H17877 | | | | | | |
| 971 | Ford Document: 820100079800008008 - HYGE Sled Test Summary: Run No. H17878 | | | | | | |
| 972 | Ford Document: 820100080090008037 - HYGE Sled Test Summary: Run No. H17879 | | | | | | |
| 973 | Ford Document: 820100080380008066- HYGE Sled Test Summary: Run No. H17880 | | | | | | |
| 974 | Ford Document: 820100080670008095 - HYGE Sled Test Summary: Run No. H17881 | | | | | | |

| 975 | Ford Document: 820100080960008124 - HYGE Sled Test Summary: Run No. H17882 | | | | | | |
|-----|-----|---|---|---|---|---|---|
| 976 | Ford Document: 820100081250008153 - HYGE Sled Test Summary: Run No. H17883 | | | | | | |
| 977 | Ford Document: 820100081540008182 - HYGE Sled Test Summary: Run No. H17884 | | | | | | |
| 978 | Ford Document: 820100081830008193 - HYGE testing photographs; Run Nos. H17880-884 | | | | · | | |
| 979 | Ford Video:  8201 8194 17783-17788 Test Runs Video | | | | | | |
| 980 | Ford Video:  8201 8195 18062-18065 Test Runs Video | | | | | | |
| 981 | Ford Video:  8201 8196 18122-18123 Test Runs Video | | | | | | |
| 982 | Ford Video:  8201 8197 H18214-H18218 Test Runs Video | | | | | | |
| 983 | Ford Video:  8201 8198 18409-18412 Test Runs Video | | | | | | |
| 984 | Ford Video:  8201 8199 17653-17662, 17877-17884, 18219-18241, 18300-18304, 18359-18364, 18469-18472, 18507-18514  Runs Video | | | | | | |
| 985 | Ford Video:  8201 8200 T26123, TA0148, TA0148A, TA01488, TA2779; H17437-42, H18056-60; H18413-22 Test Runs Video | | | | | | |

# EXHIBIT "P-2"

CutePDF – www.fwvio.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **APOLINAR COMPEAN** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. B-00-028** |
| | § | |
| **FORD MOTOR COMPANY** | § | |

**ATTACHMENT "P-2"
PLAINTIFF'S WITNESS LIST**

Plaintiff, APOLINAR COMPEAN, presents this list of witnesses they anticipate offering on the trial of this cause.

Respectfully submitted,

HINOJOSA & POWELL, P.C.
Attorneys at Law
612 Nolana, Suite 410
McAlllen, TX 78504
956/686-2413
956/686-8462 fax

BY: _____
       GEORGE P. POWELL
       Attorney for Plaintiff
       State Bar No. 16196000
       Fed. Id. No. 3849

# WITNESS LIST

Apolinar Compean
343 Palmero Street
San Benito, TX 78586

Reynaldo Salinas, Jr.
Rt. 3 Box 9
Los Fresnos, TX

Geronimo Ramirez
820 Elizabeth
San Benito, TX 78586

Officer Ted Torres
c/o San Benito Police Dept.
San Benito, TX 78586

Dolly Vinsant Memorial Hospital
P. O. Box 42
San Benito, TX 78586

Valley Radiologists & Associates
P. O. Box 2918
Harlingen, TX 78551

Raul Garza, Jr., M.D., P.A.
Family Practice
400 W. Highway 77
San Benito, TX 78586

Christop Walker, P.T.
Healthsouth-Harlingen
401 S. Helen Moore Rd.
San Benito, TX 78586

Bill Hauser, M.D.
Spectrum Imaging
1016 S.Closner
Edinburg, TX 78539

Dr. Jorge E. Tijmes
Southern Bone & Joint Assoc.
P. O. Box 6209
McAllen, TX 78502

Raul Marquez, M.D.
Orthopedic Surgery Center
2402 Cornerstone Blvd.
Edinburg, TX 78539

Lorenzo Basave
925 Woodford
San Benito, TX 78586

# EXHIBIT "D-2"

CVISPDF – www.fastio.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

APOLINAR COMPEAN        \*
                                     \*

VS.                            \*       **CIVIL ACTION NO. B-00-028**
                                     \*

FORD MOTOR COMPANY     \*

## ATTACHMENT "D-2"
## FORD MOTOR COMPANY'S WITNESS LIST

## I.

The following witnesses may be called to testify as live witnesses or by their depositions where noted, by Defendant in its case-in-chief. Defendant reserves the right to cross-examine all witnesses called by Plaintiff in his case in chief.

> Roger Burnett
> Design Analysis Engineer
> Ford Motor Company
> Parklane Towers West, Suite 604
> Three Parklane Blvd.
> Dearborn MI  48126
> (313) 845-1838
> Ford Motor Company design analysis engineer named as expert who may be asked to testify regarding Ford Motor Company's design, manufacture and marketing of the 1993 F-150 pick-up and the component parts at issue in this case,  Ford policies and procedures; industry standards, Federal Motor Vehicle Safety Standard crashworthiness requirements,  negligence and/or strict liability issues, examination of the seat and seat back of the subject pick-up, his investigation and/or analysis of the subject accident.

> Dr. Richard Harding
> Biodynamic Research Corporation
> 9901 IH-10 West, Suite 1000
> San Antonio, TX  78230
> (210) 691-0281
> Biomechanic named by expert who may be asked to testify regarding biomechanics including, but not limited to, injury causation and occupant kinematics.

CMPDF - www.hexio.com

Dr. Juan Herrera
Met Tech, Inc.
484 Timber Oaks
El Paso, Texas 79932
(915) 833-2326
Mechanical engineer, welder and metallurgist with expertise in accident reconstruction and failure analysis named as expert who may be asked to testify about basic accident reconstruction, including the movements of the vehicles involved, the amount of evidence available for reconstruction, and certain minimum speed numbers; the performance of the vehicle's component parts at issue, including but not limited to the seat and seat back of the subject vehicle, the structural integrity of those systems; metallurgical issues; negligence and/or strict liability.

Dr. Raul Marquez
2402 Cornerstone Blvd.
McAllen, Texas
(956) 668-0060
By videotaped deposition
Orthopedic surgeon named as expert who has performed an IME on Plaintiff and who may be asked to testify regarding his analysis of Plaintiff's condition with respect to that IME.

Reynaldo Salinas, Jr.
7467 Radford Trail
San Antonio, Texas, 78244
Phone number unknown
By videotaped deposition
Driver of vehicle which collided with Plaintiff's

Officer Ted Torres
Brownsville Police Department
600 East Jackson
Brownsville, Texas
(956)548-7000
Live or by deposition
Former San Benito Police Dept. officer who investigated accident, named as expert

## II.

Ford may also present the following records custodians by and through their Deposition on Written Questions, providing authentication for records from same:

Dolly Vinsant Memorial Hospital
Employees and/or Custodians of Records
P.O. Box 42
San Benito, Texas 78586
(956)399-1313
health care provider of Plaintiff

Dr. Raul Garza, Jr.
And/or His Custodian of Records
400 W. Highway 77
San Benito, Texas 78586
(956)399-1641
health care provider of Plaintiff

Harlingen Community Emergency Care Foundation, Inc.
Employees and/or Custodians of Records
2733 South 77 Sunshine Strip
Harlingen, Texas 78553
(956)364-2711
health care provider of Plaintiff

Healthsouth-Harlingen
Employees and/or Custodians of Records
401 S. Helen Moore Road
San Benito, Texas 78586
health care provider of Plaintiff

Dr. Raul Marquez
And/or his Custodians of Records
2402 Cornerstone Blvd.
McAllen, Texas
(956) 668-0060
provided IME to Plaintiff

Salinas Pharmacy
And/or its Custodian of Records
480-A North Sam Houston
San Benito, Texas 78586
(956)399-5501
health care provider of Plaintiff

Spectrum Imaging
And/or its Custodian of Records
1016 S. Closner
Edinburg, Texas 78539
(977)674-3926
health care provider of Plaintiff

Valley Radiologists & Associates
Employees and/or Custodians of Records
P.O. Box 2918
Harlingen, Texas 78551
health care provider of Plaintiff

Wal-Mart Pharmacy
Employees and/or Custodians of Records
850 West Highway 77
San Benito, Texas 78586
(956)399-1373
health care provider of Plaintiff

# EXHIBIT "P-3"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **APOLINAR COMPEAN** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. B-00-028** |
| | § | |
| **FORD MOTOR COMPANY** | § | |

<u>**ATTACHMENT "P-3"**</u>
<u>**VOIR DIRE QUESTIONS**</u>

1   Does anybody here know any of the attorneys with Rodriguez, Colvin & Chaney?

2   Has anyone ever had a defective vehicle that caused problems?

3   Has anybody ever been sued because of an accident of some sort?

4   If you have been sued, is that something that bothers you?

5   If you have been sued and it bothers you, is that something that would effect the way you would consider evidence in a lawsuit for injuries?

6   Does anybody feel that people should not file lawsuits for getting injured?

7   Does anybody feel that there is a problem with too many lawsuits?

8   Does anybody believe that there is a problem with how much money people get from lawsuits for their injuries?

9   Is there anyone because of these beliefs, feels that they cannot be fair to the plaintiff or either party?

10  Is there anyone who does not believe that manufacturers should not be held accountable for their defective products?

11  Is there anyone who believes that a large company like Ford would never build a defective product and sell it to the public?

12  Is there anyone here who would have difficulties in awarding damages for injuries?

13  Has anyone ever suffered from an injured back or had anyone in your family suffered from an injured back?  If so, explain the circumstances of that injury and the kind of pain suffered from the injury.


CutePDF - www.fastio.com

# EXHIBIT "D-3"

CitiPDF – www.faxio.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

APOLINAR COMPEAN       *
                                *

VS.                      *       **CIVIL ACTION NO. B-00-028**
                                *

FORD MOTOR COMPANY       *

### EXHIBIT "D-3"
### DEFENDANT FORD MOTOR COMPANY'S
### REQUESTED VOIR DIRE QUESTIONS

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW, FORD MOTOR COMPANY, a Defendant herein, and in response to the requirements of this Court's Pre-trial Order makes and files this list of Requested Voir Dire Questions, as follows:

1. On your juror cards, you indicated whether you have served as a juror before. For each juror who has indicated prior juror service before, can you tell us briefly about the nature of the case that you served as a juror in? Did you find the experience satisfactory to you as a citizen? Was there anything about that experience that would influence your service in this case?

2. On your juror cards, you indicated whether or not you have been a party to a lawsuit. Who has had a close family member involved in a lawsuit? For each juror who has indicated that he or she has been a party to a lawsuit or has had a family member in a lawsuit: Were you/they a plaintiff or a defendant? Was the lawsuit settled or did it go to trial? Were you satisfied with the result of the case? Was there anything about that experience that would influence your service in this case?

3. Does everyone understand that any person or company can bring a lawsuit simply by filing the papers and paying the filing fee?

4.     Does everyone understand that they will have to promise not to make up their mind about the case until all the evidence is in, and to wait until Ford Motor Company has had its opportunity to prevent evidence to determine what happened in this case?

5.     In light of the fact that Ford Motor Company is a corporation, and in fact a large corporation, can each potential juror accept the rule of the Court that all litigants are equal under the law and treat Ford Motor Company fairly?

6.     Does everyone understand that the duty of a manufacturer is to design, manufacture and sell a reasonably safe vehicle as opposed to a vehicle in which no one can be injured?  Does anyone have any problem with an instruction that in order to find a defect in a vehicle, you must find that the product at issue is unreasonably dangerous, taking into account the utility of that product and the risks that may be involved in its use?

7.     Does everyone agree that they will hold Plaintiff to his burden to prove every element of her case, including the amount of any damages?  Can everyone award as little or as much as the evidence warrants, including "0" or a minimal amount?

8.     Does anyone have a problem being asked to judge the testimony of eyewitness testimony as against physical evidence and possibly deciding, depending upon what you believe the greater weight of the credible evidence to be, that the eyewitness testimony is incorrect ?  Does anyone feel that they could never make findings different than the testimony of an eyewitness?

9.     .Does anyone know any of the attorneys or possible witnesses in the case? If so, how do you know them?  Would anything about that acquaintance influence the way you would listen to the evidence in the case?

10.    Has anyone or any family member of anyone been represented by the law firms of Hinojosa & Powell or the Law Offices of Lloyd Seljos, or does anyone specifically know those firms? If so, what is your connection to those firms?

11.    Does anyone have legal education or is anyone in the family of a person who has a legal education? What type of law does he or she practice? Where do they practice? What is his or her name? Is there anything about that experience that would influence your service in this case?

12.    Has anyone ever worked with an automobile dealership before? What was your job there? Was that a satisfactory experience?

13.    Does anyone have any mechanic's training? Where did you receive it? Have you ever been a professional mechanic?

14.    Does anyone have any training or experience in engineering, vehicle design, auto mechanics, or related fields? What is that training or experience? Where did you receive it?

13.    Has anyone ever had a bad experience of any kind with a Ford vehicle?

14.    Has any potential juror or any close family members ever been involved in any accident involving a Ford vehicle other than a fender-bender? What were the circumstances of the accident? What kind of injuries were suffered? For such persons, is there anything about that experience that would make the potential juror more likely to feel a leaning toward the Plaintiff's case that would make it difficult to be fair and impartial?

15.    Has anyone heard or read anything in the news about Ford products or other automotive products that you believe would cause you to be less than fully fair to an auto manufacturer?

# EXHIBIT "P-4"

CVisPDF – www.fastio.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| APOLINAR COMPEAN | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-00-028 |
| | § | |
| FORD MOTOR COMPANY | § | |

## ATTACHMENT "P-4"
## PLAINTIFF'S PROPOSED JURY QUESTIONS AND INSTRUCTIONS

This case is submitted to you asking the questions and the facts, which you must decide from the evidence you have heard in this trial. You are the sole judges of the credibility of the witnesses and the weight of their testimony, but in matters of law, you must be governed by the instructions in this charge. In discharging your responsibility on this jury, you will observe all of the instructions which have previously been given you. I shall now give you additional instructions which you should carefully and strictly follow during your deliberations.

1.   Do not let bias, prejudice or sympathy play any part in your deliberations.

2.   In arriving at your answers, consider only the evidence introduced here under oath and such exhibits, if any, as have been introduced for your consideration under the rulings of this Court, that is, what you have seen and heard in this courtroom, together, with the law given you by the Court. In your deliberations, you will not consider or discuss anything that is not represented by evidence in this case.

3.   Since every answer that is required by the charge is important, no juror should state or consider that any required answer is not important.

4.     You must not decide who you think should win, and then try to answer the questions accordingly. Simply answer the questions, and do not discuss nor concern yourselves with the effect of your answers.

5.     You will not decide the answer to a particular question by lot or by drawing straws, or by any other method of chance. Do not return a quotient verdict. A quotient verdict means that the jurors agree to abide by the result to be reached by adding together each juror's figures and by dividing by the number of jurors to get an average. Do not do any trading on your answers; that is, one juror should not agree to answer a certain question one way if others will agree to answer another question another way.

6.     You may render your verdict upon the vote of ten or more members of the jury. The same ten or more of you must agree upon all of the answers made and to the entire verdict. You will not, therefore, enter into an agreement to be bound by a majority or any other vote of less than ten jurors. If the verdict and all of the answers therein are reached by unanimous agreement, the presiding juror shall sign the verdict for the entire jury. If any juror disagrees as to any answer made by the verdict, those jurors who agree to all findings shall sign the verdict.

These instructions are given to you because your conduct is subject to review, the same as that of the witnesses, parties, attorneys and the judge. If it should be found that you have disregarded any of these instructions, it will be jury misconduct and it may require another trial by jury; then all of our time will have been wasted.

The presiding juror or any other juror who observes a violation of the Court's instructions shall immediately warn the one who is violating the Court's instructions and caution the juror not to do so again.

When words are used in this charge in a sense that varies from the meaning commonly, understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning.

Answer "Yes" or "No" to all questions unless otherwise instructed. A "Yes" answer must be based upon a preponderance of the evidence. If you do not find that a preponderance of the evidence supports a "Yes" answer, then you must answer the question "No." Whenever a question requires an answer other than "Yes" or "No", your answer must be based upon a preponderance of the evidence.

> "PREPONDERANCE OF THE EVIDENCE" means that you must be persuaded that the claim or affirmative defense is more probably true than not true. You should make this determination based upon all of the evidence, regardless of which party presented it.

> "Plaintiff" as used in this charge means APOLINAR COMPEAN.
> "Defendant" as used in this charge means FORD MOTOR COMPANY.

After you retire to the jury room, you will select your own presiding juror. The first thing the presiding juror will do is to have this complete charge read aloud and then you will deliberate upon your answers to the questions asked.

It is the duty of the presiding juror:

1.   to preside during your deliberations;

2.   to see that your deliberations are conducted in an orderly manner and in accordance with the instructions of this charge;

3.   to write out and hand the bailiff any communications concerning the case that you desire to have delivered to the judge;

4.   to vote on the questions;

5.   to write your answers to the questions in the spaces provided; and

6.      to certify to your verdict in the space provided for the
        presiding juror's signature or to obtain the signatures
        of all of the jurors who agree with the verdict if your
        verdict is lee than unanimous.

You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the judge of this fact.

When you have answered all of the questions you are required to answer under the instructions of the judge and your presiding juror has placed your answers in the spaces provided and signed the verdict as presiding juror or obtained the signatures, you will inform the bailiff at the door of the jury room that you have reached a verdict, and then you will return into court with your verdict.

                                        Judge Presiding

## PLAINTIFF'S QUESTION NO. 1

What sum of money, if paid now in cash, would fairly and reasonably compensate Apolinar Compean for his injuries, if any, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other.  Consider each element separately.  Do not include damages for one element in any other element.  Do not include interest on any amount of damages you find.

      a.      Physical pain and mental anguish.

      b.      Physical impairment.

      c.      Medical care.

Do not reduce the amounts, if any, in your answers because of the negligence, if any, of Apolinar Compean.

Answer in dollars and cents for damages, if any, that ----

were sustained in the past;      Answer: _____

in reasonable probability will
be sustained in the future.      Answer: _____

Granted: _____
Denied: _____

_____
                      JUDGE PRESIDING

## PLAINTIFF'S QUESTION NO. 2

Was there a breach of an implied warranty of fitness for a particular purpose that was a proximate cause of the occurrence or injury in question?

There was a breach by Ford Company if at the time of contracting—

1.     Ford had reason to know the particular purpose for which its product was required; and

2.     Ford had reason to know that the buyer was relying on the skill and judgment of Ford to select or furnish a suitable product; and

3.     The produce supplied by Ford was unfit for the particular purpose for which it was purchased.

Answer "Yes" or "No."

ANSWER:     _____

GRANTED:__
DENIED:_____

_____
                              JUDGE PRESIDING

## PLAINTIFF'S QUESTION NO. 3

Was there a manufacturing defect in the automobile at the time it left the possession of Ford that was a producing cause of the injury in question?

A "defect means a condition of the product that renders it unreasonably dangerous. An "unreasonably dangerous" product is one that is dangerous to an extend beyond that which would be contemplated by the ordinary user of the product, with the ordinary knowledge common to the community as to the product's characteristics.

ANSWER "YES" or "NO"

ANSWER: _____

GRANTED: _____
DENIED: _____

_____
JUDGE PRESIDING

After you retire to the jury room, you will select your own presiding juror. The first thing the presiding juror will do is to have this complete charge read aloud and then you will deliberate upon your answers to the questions asked.

It is the duty of the presiding juror --

1.    to preside during your deliberations,

2.    to see that your deliberations are conducted in an orderly manner and in accordance with the instructions in this charge,

3.    to write out and hand to the bailiff any communications concerning the case that you desire to have delivered to the judge,

4.    to vote on the questions,

5.    to write your answers to the questions in the spaces provided, and

6.    to certify to your verdict in the space provided for the presiding jurors who agree with the verdict if your verdict is less than unanimous

You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the judge of this fact.

When you have answered all of the questions you are required to answer under the instructions of the judge and your presiding juror has placed your answers in the spaces provided and signed the verdict as presiding juror or obtained the signatures, you will inform the bailiff at the door of the jury room that you have reached a verdict, and then you will return into court with your verdict.

_____
JUDGE PRESIDING

## CERTIFICATE

We, the jury, have answered the above and foregoing as herein indicated, and herewith return same into court as our verdict.

(To be signed by the presiding juror if unanimous.)

_____

Presiding Juror

(To be signed by those jurors rendering the verdict if not unanimous.)

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| APOLINAR COMPEAN | * | |
| | * | |
| VS. | * | CIVIL ACTION NO. B-00-028 |
| | * | |
| FORD MOTOR COMPANY | * | |

## <u>JOINT PRETRIAL ORDER</u>

**1.    APPEARANCE OF COUNSEL**

<u>Counsel for Plaintiffs:</u>

George Powell
State Bar No. 16196000
Federal I.D. No. 3849
HINOJOSA & POWELL
612 Nolana, Suite 410
McAllen, Texas 78504
(956) 686-2413
Fax (956)   686-8462

M. Lloyd Seljos
State Bar No. 18008300
Fed. I.D. No. 983
LAW OFFICE OF M. LLOYD SELJOS
2208 Primrose, Bldg. C
McAllen, Texas 78504
(956) 631-2700
<u>FAX: (956) 631-4975</u>

<u>Counsel for Defendant:</u>

Jaime A. Saenz
State Bar No. 17514859
Federal I.D. No. 7630
Alison Kennamer
State Bar No. 11280400
Federal I.D. No. 12023
RODRIGUEZ, COLVIN & CHANEY, L.L.P.
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
(956) 542-7441
Fax (956) 541-2170

# EXHIBIT "D-4"

CVISPDF – www.fastio.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

APOLINAR COMPEAN                    *
                                    *
VS.                                 *        CIVIL ACTION NO. B-00-028
                                    *
FORD MOTOR COMPANY                  *

## ATTACHMENT "D-4"
## FORD MOTOR COMPANY'S PROPOSED JURY CHARGE

### I.

Attached hereto is Defendant Ford Motor Company's Proposed Jury Charge materials, consisting of Ford's Proposed Verdict Form, Requested Additional Jury Instructions, and Requested Jury Instructions On Punitive Damages (If Punitive Damages Are Submitted To The Jury).

*FORD/Compean [17,902]*
*FORD'S PROPOSED JURY CHARGE*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

APOLINAR COMPEAN        §
       §
vs.        §     CIVIL ACTION NO. B-00-028
       §
       §
FORD MOTOR COMPANY        §

**DEFENDANT FORD MOTOR COMPANY'S**
**PROPOSED VERDICT FORM**

Pursuant to Rule 51 of the Federal Rules of Civil Procedure, Defendant Ford Motor Company requests that the attached questions and accompanying instructions and definitions be submitted to the jury in the Charge of the Court.

Ford files these requested questions, instructions, and definitions before the commencement of trial and files them subject to, and without waiving, its objections that the claims upon which Plaintiff may wish to recover should not be submitted to the jury at all. Ford anticipates objecting that all, or significant parts of, those claims will not be properly supported by pleadings or proof. It also anticipates objecting that all, or significant parts of, those claims will be improperly redundant or otherwise legally incorrect. Ford reserves its right to object to the submission of such claims at any appropriate later time, and it files these requested questions and instructions in the event that those objections are overruled. Ford also files these requested questions and accompanying instructions and definitions without waiving any rights it has as to any additional questions, instructions, or definitions that it has previously filed, that it files herewith, or that it may submit later.

**Design Defect**

## QUESTION NO. 1

Was there a design defect in the Ford F150 seat when it left Ford's possession?

A **"design defect"** is a condition of the product that renders it unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use. For a design defect to exist there must have been a safer alternative design.

**"Safer alternative design"** means a product design other than the one actually used that in reasonable probability—

1. would have prevented or significantly reduced the risk of the occurrence in question without substantially impairing the product's utility; and

2. was economically and technologically feasible at the time the product left Ford's control by the application of existing or reasonably achievable scientific knowledge.

Proof of a safer alternative design is necessary but is not sufficient to establish a design defect. For there to be a design defect, there must also be a condition of the product that renders it unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use.

When evaluating the reasonableness of a design alternative, the overall safety of the product must be considered. It is not sufficient that the alternative design would have reduced or prevented the harm suffered by Plaintiff if it would also have introduced into the product other damages of equal or greater magnitude.

Answer "Yes" or "No"

ANSWER: _____

**If you answered Question No. 1 "No," then you are finished. Please have the jury foreperson sign the verdict form and notify the Marshall that you have completed your deliberations. If you answered Question No. 1 "Yes," then answer Question No. 2.**

# QUESTION NO. 2

Was the design defect in the Ford F150 seat a producing cause of the injuries at issue?

Answer "Yes" or "No"

ANSWER: _____

**If you answered Question No. 2 "No," then you are finished.  Please have the jury foreperson sign the verdict form and notify the Marshall that you have completed your deliberations.  If you answered Question No. 2 "Yes," then answer Question No. 3.**

## SOURCE:

**Derived from Texas PJC 71.4B,** which has been modified in two ways.  First, the one broad form question in PJC 71.4B has been modified to make clear that this is actually submitting two separate issues: design defect and causation.  Second, the paragraph following the definition of "safer alternative design" has been added to the language of PJC 71.4B.  That comes from *Hernandez v Tokai Corp.*, 2 S.W.3d 251 (Tex. 1999).  That decision made clear that proof of a safer alternative design does not establish a design defect, although there cannot be a design defect without proof of a safer alternative design.  In addition to showing a safer alternative design, establishing a design defect also requires proof that the product is unreasonably dangerous when its utility is balanced against its risk:

> proof of an available 'safer alternative design', as defined by statute, is necessary but not sufficient for liability; the claimant must also show that the product was unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use.

2 S.W.3d at 254-55.  The court emphasized the point by repetition:

> proof of a safer alternative design under [Texas Civil Practice & Remedies Code] section 82.005 is necessary but not sufficient to maintain a defective-design claim.  The claimant must also prove a design defect, which, under Texas common law, is a condition of the product that renders it 'unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use.'

2 S.W.3d at 258, *quoting Turner v General Motors Corp.*, 584 S.W.2d 844, 847 n.1 (Tex. 1979).  **PJC 70.1** ("producing cause" definition).  **PJC 70.3** (sole cause instruction).

As the new Restatement explains, "When evaluating the reasonableness of a design alternative, the overall safety of the product must be considered. It is not sufficient that the alternative design would have reduced or prevented the harm suffered by the plaintiff if it would have also introduced into the product other dangers of equal or greater magnitude." *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 337 (Tex. 1998), *quoting* RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 cmt. f; *see also Hernandez v. Tokai Corp.*, 2 S.W.3d 251 (Tex. 1999) ("In *Caterpillar Co. v. Shears*, we held that a product that is safe for its intended use is not defectively designed merely because it is unsafe in other circumstances."). *See also Crespo v. Chrysler Corp.*, No. 97 Civ. 8246 (JSR), 1999 U.S. Dist. LEXIS 17888 at *8 (S.D.N.Y. Nov. 19, 1999) ("This requirement that the alternative design be not only feasible but also safer for the relevant users is vital, for otherwise a plaintiff could recover simply by showing that a product could feasibly and without loss of utility be designed in such a way as to avoid injury to him alone even though the change would inflict injury on numerous others -- an absurd position."); *see also id.* at *7 n.7 (S.D.N.Y. Nov. 19, 1999) ("*Richards v. Michelin Tire Corp.*, 21 F.3d 1048, 1057 (11th Cir. 1994) (applying Alabama law) ('The fact that an alternative design existed which would have reduced or eliminated Appellant's injuries does not mean that the alternative design was of greater overall safety.'); *Hull v. Eaton Corp.*, 263 U.S. App. D.C. 311, 825 F.2d 448, 454 (D.C. Cir. 1987) (applying Maryland law) ('[A] plaintiff must show that the magnitude of the danger from the product outweighed the costs of avoiding the danger -- including, for example, any new dangers created and any reduction in the benefits of the product caused by the safer design.'); *Miller v. Todd*, 551 N.E.2d 1139, 1143 (Ind. 1990) (requiring a plaintiff 'to demonstrate that a feasible, safer, more practicable product design would have afforded better protection'); *Owens v. Allis-Chalmers Corp.*, 414 Mich. 413, 326 N.W.2d 372, 379 (Mich. 1982) (under Michigan law, prima facie case of design defect requires, inter alia, evidence concerning impact of alternative forklift design on 'operator's safety in other circumstances'). *See generally* James A. Henderson, Jr. & Aaron D. Twerski, *Arriving at Reasonable Alternative Design: The Reporters' Travelogue*, 30 U. MICH. J.L. REF. 563 (1997).").

GIVEN_____     GIVEN AS MODIFIED_____REFUSED_____

_____
UNITED STATES MAGISTRATE JUDGE

# QUESTION NO. 3

Do you find that the defective design of the seat back system by Ford caused greater damages to Apolinar Compeon than those which would have resulted from the accident had the alternative design been used?

Answer "Yes" or "No"

ANSWER: _____

**If you answered Question No. 3 "No," then you are finished.  Please have the jury foreperson sign the verdict form and notify the Marshall that you have completed your deliberations.  If you answered Question No. 3 "Yes," then answer Question No. 4.**


SOURCE:

"We agree with the general proposition that a manufacturer should not be liable for failing to adopt an alternative design that would, under other circumstances, impose an equal or greater risk of harm." *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 337 (Tex. 1998). "To prevail in a design defect case, a plaintiff should be required to show that the safety benefits from its proposed design are foreseeably greater than the resulting costs, including any diminished usefulness or diminished safety." *Id.*; RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2(b) cmt. e. *See also Crespo v. Chrysler Corp.*, No. 97 Civ. 8246 (JSR), 1999 U.S. Dist. LEXIS 17888 at *8 (S.D.N.Y. Nov. 19, 1999) ("This requirement that the alternative design be not only feasible but also safer for the relevant users is vital, for otherwise a plaintiff could recover simply by showing that a product could feasibly and without loss of utility be designed in such a way as to avoid injury to him alone even though the change would inflict injury on numerous others -- an absurd position."); *see also id.* at *7 n.7 (S.D.N.Y. Nov. 19, 1999) ("*Richards v. Michelin Tire Corp.,* 21 F.3d 1048, 1057 (11th Cir. 1994) (applying Alabama law) ('The fact that an alternative design existed which would have reduced or eliminated Appellant's injuries does not mean that the alternative design was of greater overall safety.'); *Hull v. Eaton Corp.*, 263 U.S. App. D.C. 311, 825 F.2d 448, 454 (D.C. Cir. 1987) (applying Maryland law) ('[A] plaintiff must show that the magnitude of the danger from the product outweighed the costs of avoiding the danger -- including, for example, any new dangers created and any reduction in the benefits of the product caused by the safer design.'); *Miller v. Todd*, 551 N.E.2d 1139, 1143 (Ind. 1990) (requiring a plaintiff 'to demonstrate that a feasible, safer, more practicable product design would have afforded better protection'); *Owens v. Allis-Chalmers Corp.*, 414 Mich. 413, 326 N.W.2d 372, 379 (Mich. 1982) (under Michigan law, prima facie case of design defect requires, inter alia, evidence concerning impact of alternative forklift design on 'operator's safety in other circumstances'). *See generally* James A. Henderson, Jr. & Aaron D. Twerski, *Arriving at Reasonable Alternative Design: The Reporters' Travelogue*, 30 U. MICH. J.L. REF. 563 (1997).").

GIVEN_____        GIVEN AS MODIFIED_____REFUSED_____

_____
UNITED STATES MAGISTRATE JUDGE

## Negligence

## QUESTION NO. 4

Did the negligence, if any, of those named below proximately cause the injuries at issue?

"**Negligence**" means failure to use ordinary care; that is to say, failure to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"**Ordinary care**" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

"**Proximate Cause**" means that cause which, in a natural and continuous sequence,      unbroken by any new and independent cause, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event, but if an act or omission of any person not a party to the suit was the "sole proximate cause" of an occurrence, then no act or omission of any other person could have been a proximate cause.

"**New and independent cause**" means the act or omission of a separate and independent agency, not reasonably foreseeable, that destroys the causal connection, if any, between the act or omission inquired about and the occurrence in question and thereby becomes the immediate cause of such occurrence.

Answer "Yes" or "No" for each of the following:

Apolinar Compean                _____

Reynaldo Salinas, Jr.            _____

**SOURCE:**

**Derived from Texas PJC 2.1** (definitions of "negligence" and "ordinary care"), **PJC 2.4** (definition of "proximate cause"), **PJC 4.1** (broad form question), **PJC 3.1** ("new and independent cause" definition and instruction), **PJC 3.2** (sole proximate cause instruction).

GIVEN_____        GIVEN AS MODIFIED_____REFUSED_____

_____
UNITED STATES MAGISTRATE JUDGE

## Comparative responsibility

**If you have answered "Yes" to Questions 1, 2, 3, and 4 for more than one of those named below, then answer Question No. 5. Otherwise, do not answer Question No. 5 and proceed to Question No. 6.**

## QUESTION NO. 5

Below, you are asked to indicate, for each person whose product or negligence you have found caused Plaintiff's injury, the appropriate percentage of responsibility. Your answer must be stated in the form of a percentage. The percentages you find must total 100 percent. The percentages must be expressed in whole numbers. The percentage of responsibility attributable to a person or product is not necessarily measured by the number of acts, omissions, or product defects found. The percentage attributable to a person or product need not be the same percentage attributed to that person or product in answering another question. You should not attribute any percentage of responsibility to any person or product that was not found to be a cause of Plaintiff's injury in Questions 2, 4, or 5.

For each person or product that you have found caused injury to Apolinar Compean, find the percentage of responsibility for:

| | |
|---|---|
| Apolinar Compean | _____ |
| Reynaldo Salinas, Jr. | _____ |
| The Ford F150 seat | _____ |
| **TOTAL:** | **100%** |

**SOURCE:**

**From Texas PJC 71.11.** This question submits the comparative responsibility of the plaintiff, defendant, and settling party under TEX. CIV. PRAC. & REM. CODE § 33.003. The comment to PJC 71.11 acknowledges that the statute refers to allocating the percentage of "responsibility," rather than percentage of "causation."

GIVEN_____        GIVEN AS MODIFIED_____REFUSED_____

_____
**UNITED STATES MAGISTRATE JUDGE**

CMPDF - www.fasoo.com

## Compensatory Damages

**If you have answered "Yes" to Questions 1, 2, and 3 then answer the remaining questions. Otherwise, you are finished. Please have the jury foreperson sign the verdict form and notify the Marshall that you have completed your deliberations. If you answered "Yes" to Questions 1, 2, and 3 then answer Question No. 6.**

## QUESTION NO. 6

What sum of money, if paid now in cash, would fairly and reasonably compensate Apolinar Compean for his injuries, if any, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find. Do not reduce the amount, if any, in your answer because of the negligence, if any, of Apolinar Compean.

Answer separately, in dollars and cents for damages, if any.

a. What sum of money would have fairly and reasonably compensated Apolinar Compean for pain and mental anguish?

"Pain and mental anguish" means the conscious physical pain and emotional pain, torment, and suffering experienced by Apolinar Compean as a result of the occurrence in question.

Answer: _____

b. What sum of money would have fairly and reasonably compensated Apolinar Compean for medical expenses?

"Medical expenses" means the reasonable expense of the necessary medical and hospital care received by Apolinar Compean for treatment of injuries she sustained as a result of the occurrence in question.

Answer: _____

c.     What sum of money would fairly and reasonably compensate Apolinar Compean for loss of earning capacity sustained in the past and that, in reasonable probability, Apolinar Compean will sustain in the future?

Answer:   _____

**SOURCE:**

**PJC 80.2,** modified to distinguish economic from noneconomic damages and to eliminate separate questions on past and future damages.  Since the plaintiff seeks recovery of exemplary damages, the jury should determine the amount of economic damages separately from the amount of other compensatory damages. *See* TEX. CIV. PRAC. & REM. CODE § 41.008. "Economic damages" means compensatory damages for pecuniary loss and does <u>not</u> include damages for physical pain and mental anguish, loss of consortium, disfigurement, physical impairment, or loss of companionship and society. *Id.,* § 41.001(4).    Providing separate blanks for past and future damages is a useless hold-over from a time when pre-judgment interest was not awarded on future damages. But pre-judgment interest is now calculated on the entire damage award, including any damages to be sustained in the future. *See* TEX. FIN. CODE § 304.104; *C&H Nationwide, Inc. v Thompson,* 903 S.W.2d 315, 324-25 (Tex. 1994). The comment to PJC 80.2 acknowledges this inconsistency by citing *Thompson* with a "but see."    Submitting separate blanks for past and future damages is not only pointless, it conflicts with the requirement to use a broad form submission "whenever feasible."   *See Texas Dept. of Human Services v E.B.,* 802 S.W.2d 647,649 (Tex. 1990).

**GIVEN**_____        **GIVEN AS MODIFIED**_____**REFUSED**_____

_____
**UNITED STATES MAGISTRATE JUDGE**

## Compensatory Damages

## QUESTION NO. 7

State the amount of damages, if any, Apolinar Compean would have suffered as a result of the accident had Ford Motor Company adopted the safer alternative design proposed by Plaintiff.

Answer in dollars and cents, if any, considering the same elements as in the previous Question No. 3.

<u>ANSWER</u>:   $_____

SOURCE:

*Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 428 (Tex. 1984) (holding that a defendant's liability in a crashworthiness case is limited to the extent plaintiff's damages are attributable to or enhanced by the defect).

GIVEN_____       GIVEN AS MODIFIED_____REFUSED_____

_____
**UNITED STATES MAGISTRATE JUDGE**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| APOLINAR COMPEAN | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-00-028 |
| | § | |
| | § | |
| FORD MOTOR COMPANY | § | |
| | § | |

**DEFENDANT FORD MOTOR COMPANY'S**
**REQUESTED JURY INSTRUCTIONS ON PUNITIVE DAMAGES**
**(IF PUNITIVE DAMAGES ARE SUBMITTED TO THE JURY)**

Defendant Ford Motor Company objects to the submission of any question to the jury based upon "malice," or any other theory which would permit the recovery of punitive damages, for a variety of reasons. Nonetheless, in an abundance of caution and only in the event that a claim for punitive damages is submitted to the jury, Ford asks the Court to instruct the jury on the law as indicated on the attached pages containing Instructions.

## PUNITIVE DAMAGES REQUESTED INSTRUCTION NO. 1

You may award punitive damages only if you find that Ford's conduct constituted such an extreme and flagrant departure from the broad range of acceptable conduct that it reflects an intent to cause harm without justification.

**SOURCE:**   Under Texas statutory law, the trier of fact must be instructed on the definition and purposes of punitive damages. *See*   TEX. CIV. PRAC. & REM. CODE § 41.010.

GIVEN_____    GIVEN AS MODIFIED_____REFUSED_____

_____
**UNITED STATES MAGISTRATE JUDGE**

## PUNITIVE DAMAGES REQUESTED INSTRUCTION NO. 2

Punitive damages may be awarded in this case only if you find, in accordance with the Court's instructions, that Ford engaged in conduct warranting punitive damages, and then only if you find that punitive damages are necessary as a penalty or by way of punishment.

SOURCE:   Under Texas statutory law, the trier of fact must be instructed on the definition and purposes of punitive damages. *See* TEX. CIV. PRAC. & REM. CODE § 41.010.

GIVEN_____          GIVEN AS MODIFIED_____REFUSED_____

_____
**UNITED STATES MAGISTRATE JUDGE**

## PUNITIVE DAMAGES REQUESTED INSTRUCTION NO. 3

The plaintiff's burden to show by clear and convincing evidence that the injury to that plaintiff resulted from malice may not be shifted to Ford nor satisfied by evidence of ordinary negligence, bad faith, or deceptive trade practice.

SOURCE:    TEX. CIV. PRAC. & REM. CODE § 41.003(a), (b)
           TEX. CIV. PRAC. & REM. CODE § 41.012

GIVEN_____        GIVEN AS MODIFIED_____REFUSED_____

_____
**UNITED STATES MAGISTRATE JUDGE**

**PUNITIVE DAMAGES REQUESTED INSTRUCTION NO. 4**

Punitive damages are not designed to compensate the Plaintiff, and the Plaintiff has no right or entitlement to punitive damages.

**SOURCE:**    *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 n.7 (Tex. 1994).

**GIVEN**_____          **GIVEN AS MODIFIED**_____**REFUSED**_____

_____
**UNITED STATES MAGISTRATE JUDGE**

## PUNITIVE DAMAGES REQUESTED INSTRUCTION NO. 5

You may award punitive damages to the Plaintiff only if you find by clear and convincing evidence that the harm the Plaintiff suffered in this accident resulted from malice by Ford. To find by clear and convincing evidence that the defendant engaged in conduct warranting an award of punitive damages, you must have a firm belief or conviction as to that fact. The clear and convincing standard of proof is a higher standard of proof than the preponderance of the evidence standard.

**SOURCE:**  TEX. CIV. PRAC. & REM. CODE §§ 41.003, 41.010, 41.012, and 41.001(1). This instruction informs the jury of the elevated evidentiary burden in answering any question respecting punitive damages, and for clarity in understanding, contrasts that burden with the preponderance of evidence standard.

GIVEN_____       GIVEN AS MODIFIED_____REFUSED_____

UNITED STATES MAGISTRATE JUDGE

## PUNITIVE DAMAGES REQUESTED INSTRUCTION NO. 6

A mere finding that the defendant's product contained a design defect that rendered the product unreasonably dangerous does not alone establish that the defendant's conduct in designing and distributing that product involved an extreme degree of risk. The threshold for finding an extreme degree of risk is significantly higher than the threshold for finding a product unreasonably dangerous.

**SOURCE:**   Modification and implementation of TEX. CIV. PRAC. & REM. CODE § 41.003(a), (b), TEX. CIV. PRAC. & REM. CODE § 41.012; *See also Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 21 (Tex. 1994) ("Gross negligence, then, differs from ordinary negligence with respect to both elements--the defendant must be 'consciously indifferent' and his or her conduct must 'create an extreme degree of risk.'").

GIVEN_____          GIVEN AS MODIFIED_____REFUSED_____

_____
**UNITED STATES MAGISTRATE JUDGE**

# PUNITIVE DAMAGES REQUESTED INSTRUCTION NO. 7

You may award punitive damages only if you find by clear and convincing evidence that the product design chosen by Ford created a risk of harm that was known to Ford at the time of manufacture and that so greatly and flagrantly exceeded the benefits of the design that Ford could not in good faith have believed that the overall benefits of the design or warning outweighed the risks of the design or warning.

**SOURCE:**    "Even if the insurer has 'no reasonable basis' to deny or delay payment of the claim, the plaintiff may not recover punitive damages on that basis alone." *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 18 (Tex. 1994). The same analogy applies in product cases. A product is not "unreasonably dangerous" simply because a "safer alternative design" exists. *Hernandez v. Tokai Corp.*, ___ S.W.2d ___ (Tex. 1999), 42 Tex. Sup. Ct. J. 1131 (Aug. 26, 1999). That determination is still made under a risk-utility test. Hence, punitive damages can only exist in a product case when no reasonable person would find the manufacturer's risk-utility balancing was done in good faith. Mere negligence or mistake or second-guessing does not rise to the level of "malice." *Cf.* TEX. CIV. PRAC. & REM. CODE § 41.003(b).

**GIVEN**_____        **GIVEN AS MODIFIED**_____**REFUSED**_____

---

**UNITED STATES MAGISTRATE JUDGE**

# PUNITIVE DAMAGES REQUESTED INSTRUCTION NO. 8

In determining whether to award punitive damages to the Plaintiff, you must consider only that conduct by Ford which you find caused the Plaintiff's injury in this case.

**SOURCE:**   TEX. CIV. PRAC. & REM. CODE § 41.004(b).

GIVEN_____     GIVEN AS MODIFIED_____REFUSED_____

_____
**UNITED STATES MAGISTRATE JUDGE**

CltePDF - www.fesito.com

# PUNITIVE DAMAGES REQUESTED INSTRUCTION NO. 9

In determining whether Ford's conduct involved an extreme degree of risk, and in determining whether Ford proceeded in conscious indifference to the rights, safety or welfare of the Plaintiff or others, you may consider the conduct of other manufacturers in the defendant's industry in designing or distributing products similar to the defendant's product.

**SOURCE:**   *American Cyanamid Co. v. Roy*, 498 So. 2d 859 (Fla. 1986) ("While we agree with the district court that compliance with industry guidelines should not be taken as conclusive evidence bearing on the question of a corporation's negligence, such information may certainly bear on whether a party's behavior represents such an extreme departure from accepted standards of care as to justify punitive damages."); *Nigro v. Remington Arms Co., Inc.*, 432 Pa. Super. 60, 637 A.2d 983 (1993) ("Compliance with industry standard and custom tends to support the defense that Remington acted with a nonculpable state of mind, and would negate an inference of wanton indifference to rights of others. Accordingly, such evidence is material and admissible to refute Nigro's claim for punitive damages."); *Reed v. Tiffin Motor Homes, Inc.*, 697 F.2d 1192, 1198 (4th Cir. 1982) (whether defendant followed industry standards and complied with the state of art while designing product is probative on the issue of wantonness, willfulness and maliciousness of defendant's acts).

**GIVEN**_____      **GIVEN AS MODIFIED**_____**REFUSED**_____

_____
**UNITED STATES MAGISTRATE JUDGE**

**PUNITIVE DAMAGES REQUESTED INSTRUCTION NO.**

You may not award punitive damages merely because you have found by a preponderance of the evidence that the product was defective or that the Defendant was negligent. An honest mistake or error of judgment does not constitute malice. Neither does extreme incompetence. Rather, you may award punitive damages only if you find by clear and convincing evidence that (a) the Defendant had no arguably legitimate reasons for designing the product as it did, (b) no reasonable person could have concluded that the product was not defective, (c) Defendant knew, or recklessly ignored, that it was creating a highly unreasonable risk to the safety of others, and (d) went ahead with the design anyway in the face of this known degree of risk.

SOURCE: David G. Owen, *Problems in Assessing Punitive Damages Against Manufacturers of Defective Products*, 49 U. CHI. L. REV. 1, 38 (1982) ("[Punitive] damages usually will not be appropriate unless the product was very defective, and plainly so, at the time it was sold. A plaintiff usually should be entitled to a directed verdict on defectiveness, or close thereto, before the punitive damages issue is properly before the jury at all."); *cf. Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994) ("Evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith."). To prove bad faith in the context of an insurance bad faith case, the insured must prove that the insurer had no reasonable basis for denying or delaying payment of the claim, and that it knew or should have known that fact. *Id.* at 18. But then the bad faith of the insurer justifies an award of compensatory damages and nothing more. *Id.* Only when accompanied by malicious, intentional, fraudulent or grossly negligent conduct does bad faith justify punitive damages. The same reasoning should apply to product liability cases. *Id.* ("It is important to maintain the distinction between punishment and compensation in the context of bad faith *as it is in the remainder of tort law*." (Emphasis added).)

All products involve some risk of injury.  The fact that a jury finds that a manufacturer should have adopted a different design, for example, and that the manufacturer's chosen design was "unreasonably dangerous," justifies an award of compensatory damages and nothing more.  Only when accompanied by malicious, intentional, fraudulent or grossly negligent conduct does the manufacturer's conduct justify punitive damages.

GIVEN_____          GIVEN AS MODIFIED_____REFUSED_____

_____
UNITED STATES MAGISTRATE JUDGE

# PUNITIVE DAMAGES REQUESTED INSTRUCTION NO. 11

Punitive damages are not favored in the law and they are allowed only in extreme cases, with caution and within narrow limits.  Punitive damages are not awarded to compensate the plaintiff for actual injuries suffered as a result of a defendant*s misconduct. Rather, punitive damages are an extraordinary penalty similar to criminal fines that are imposed to punish outrageous and intentional misconduct that society as a whole considers especially reprehensible and in that way to deter the defendant and others from engaging in similar misconduct in the future. You need not award punitive damages if you find that this purpose would not be advanced in this case. In the event that you decide to award punitive damages, only that amount necessary to accomplish the deterrent purpose of punitive damages should be awarded.

When making these decisions, keep in mind that society views the imposition of punishment, including punitive damages, as an exceedingly serious and important task that should be done only after careful and thoughtful deliberation. In deciding whether to impose, and in fixing the amount of, punitive damages, you must act with calm reason and sound discretion and take care to ensure that bias, passion or prejudice do not enter into the decision in any way.  Whether to impose punitive damages is discretionary, which means that you do not have to award them unless you believe the facts require them.

**SOURCE:**   Punitive damages are a windfall to the plaintiff. *See Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994) ("Although punitive damages are levied for the public purpose of punishment and deterrence, the proceeds become a private windfall."). The jury need not award *any* amount as punitive damages.  *See* TEX. CIV. PRAC. & REM. CODE § 41.010(b) ("The determination of whether to award exemplary damages and the amount of exemplary damages to be awarded is within the discretion of the trier of fact."). The trial court is required by statute to instruct the jury on this fact. *See* TEX. CIV. PRAC. & REM. CODE § 41.012 ("In a trial to a jury, the court shall instruct the jury with regard to Sections . . . 41.010 . . . ."). The seriousness of the claim requires additional instructions be given. *See Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 16 (Tex. 1994) ("The legal justification for punitive damages is similar to that for criminal punishment, and like criminal punishment, punitive damages require appropriate substantive and procedural safeguards to minimize the risk of unjust punishment.").

GIVEN_____        GIVEN AS MODIFIED_____REFUSED_____

_____
**UNITED STATES MAGISTRATE JUDGE**

**PUNITIVE DAMAGES REQUESTED INSTRUCTION NO.**

In determining the proper amount of punitive damages, you may not consider Ford's wealth or size.

**SOURCE:**   American Law Institute, *Reporters' Study: Enterprise Responsibility for Personal Injury,* Vol. II at 253-255 (1991); Malcolm E. Wheeler, *A Proposal for Further Common Law Development of the Use of Punitive Damages in Modern Product Liability Litigation,* 40 ALA. L. REV. 919, 950-952 (1989); *Pivot Point Int'l v. Charlene Products, Inc.,* 932 F. Supp. 220 (N.D. Ill. 1996); *cf. Honda Motor Co. v. Oberg,* 512 U.S. 415 (1994) (discussing dangers of permitting such evidence); *TXO Production Corp. v. Alliance Resources Corp.,* 509 U.S. 443 (1993).

GIVEN_____       GIVEN AS MODIFIED_____REFUSED_____

_____
**UNITED STATES MAGISTRATE JUDGE**

## PUNITIVE DAMAGES REQUESTED INSTRUCTION NO. 13

If you determine that punitive damages against Ford are necessary to achieve proper deterrence or punishment, you must determine the amount of that award only by considering conduct that occurred in Texas or that had an impact on residents of Texas. You may not consider sales of the product that took place outside Texas or other actions that have no connection to Texas.

Similarly, to the extent that you consider the profit, if any, that Ford realized by committing the wrongful acts alleged in this case by plaintiffs, you may consider only those profits, if any, derived from such wrongful acts committed by Ford in the State of Texas and having an impact on citizens of the State of Texas. You may not award punitive damages for the purpose of punishing Ford for conduct in other states or for conduct unrelated to Ford*s conduct affecting citizens of the State of Texas.

SOURCE:   *See BMW of North America, Inc. v. Gore*, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996); *Geressy v Digital Equipment Co.*, 950 F. Supp. 519 (E.D.N.Y. 1997).

GIVEN_____          GIVEN AS MODIFIED_____REFUSED_____

_____
UNITED STATES MAGISTRATE JUDGE

## PUNITIVE DAMAGES REQUESTED INSTRUCTION NO. 14

Since the plaintiff will be made whole by any compensatory award, the plaintiff must be viewed as acting on behalf of the public in seeking an award of punitive damages, and such damages are appropriate only to the extent that they serve a legitimate public purpose. As I mentioned, the purpose of imposing punitive damages against a corporation is to deter similar misconduct in the future by the defendant and others. Society would be harmed by, and you must not award, punitive damages in any amount larger than what is needed to accomplish this purpose.

SOURCE:    *See BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996); *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1 (1991); *see also Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 18 (Tex. 1994) ("Every tort involves conduct that the law considers wrong, but punitive damages are proper only in the most exceptional cases.").

GIVEN_____          GIVEN AS MODIFIED_____REFUSED_____

_____
UNITED STATES MAGISTRATE JUDGE

## PUNITIVE DAMAGES REQUESTED INSTRUCTION NO. 15

Ordinarily, it constitutes sufficient punishment and deterrence to deprive a corporate defendant of the monetary gain realized from the wrongful conduct of its employees. Therefore, if you decide to award punitive damages in this case, the maximum amount you may award is the amount of money saved by Defendant by not utilizing the alternative design proposed by the Plaintiff in the product involved in this case less the amount of compensatory damages you have awarded.

SOURCE:   *See generally BMW of North America, Inc. v. Gore,* 116 S. Ct. 1589 (1996); *Uniform Law Commissioners' Model Punitive Damages Act,* § 6(c) (Approval Draft, July 1996); American Law Institute, *Reporters' Study: Enterprise Responsibility for Personal Injury,* Vol. II at 254 (1991); Malcolm E. Wheeler, *A Proposal for Further Common Law Development of the Use of Punitive Damages in Modern Product Liability Litigation,* 40 ALA. L. REV. 919, 947 (1989).

GIVEN_____      GIVEN AS MODIFIED_____REFUSED_____

UNITED STATES MAGISTRATE JUDGE

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.


By: _____
      Jaime A. Saenz
      Attorney-in-Charge
      State Bar No. 17514859
      Federal Admissions No. 7630
      Alison Kennamer
      State Bar No. 11280400
      Federal Admissions No. 12023
      1201 East Van Buren
      P.O. Box 2155
      Brownsville, Texas 78522
      (956) 542-7441
      (956) 541-2170 (fax)

      ATTORNEYS FOR DEFENDANT
      FORD MOTOR COMPANY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

APOLINAR COMPEAN                   §
                                   §
vs.                                §        CIVIL ACTION NO. B-00-028
                                   §
                                   §
FORD MOTOR COMPANY                 §
                                   §

**DEFENDANT FORD MOTOR COMPANY'S
REQUESTED ADDITIONAL JURY INSTRUCTIONS**

Pursuant to Rule 51 of the Federal Rules of Civil Procedure, Defendant Ford
Motor Conpany requests that the attached instructions and definitions be submitted to
the jury in the Charge of the Court.

Ford files these requested instructions and definitions subject to, and without
waiving, its objections that the claims upon which Plaintiff may wish to recover should
not be submitted to the jury at all. Ford contends that all, or significant parts of, those
claims are not properly supported by pleadings or proof. It also contends that all, or
significant parts of, those claims are improperly redundant or are otherwise legally
incorrect. Ford reserves its right to object to the submission of such claims at any
appropriate later time, and it files these requested instructions and definitions in the
event that those objections are overruled. Ford also files these requested instructions
and definitions without waiving its rights as to any additional instructions or definitions
that it has previously filed, that it files herewith, or that it or that it may submit later.

CitaPDF - www.texiss.com

**FORD'S REQUESTED INSTRUCTION NO. 1 (to precede all questions)**

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. [You have heard the closing arguments of the attorneys.] Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You will recall that during the course of this trial I instructed you that certain testimony and certain exhibits were admitted into evidence for a limited purpose and I instructed you that you may consider some documents as evidence against one party but not against another. You may consider such evidence only for the specific limited purposes for which it was admitted.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

Certain testimony in this case [has been] presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked a witness in advance of

the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, the witness' testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you insofar as possible in the same way as if the witness had been present and had testified from the witness stand in court.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence -- such as testimony of an eyewitness. The other is indirect or circumstantial evidence -- the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field -- he is called an expert witness -- is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can

address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

Attached to this Jury Charge is a Verdict Form which contains various questions. Before answering each of the questions on the Verdict Form, you must consider the instructions for those questions which are provided below. After considering the instructions for a question in the Jury Charge, turn to that question in the Verdict Form and answer it.

SOURCE:    *See* Sections 2.23, 3.1 U.S. Fifth Circuit Pattern Jury Instructions, to which the last paragraph has been added.


GIVEN_____        GIVEN AS MODIFIED_____ REFUSED_____


_____
UNITED STATES MAGISTRATE JUDGE

**FORD'S REQUESTED INSTRUCTION NO. 2 (to precede all questions)**

Regardless of any opinion you have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any view of the law other than that given in the instructions of the Court, just as it would also be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything other than the evidence in the case.

In deciding the facts of this case you must not be swayed by bias or prejudice or favor as to any party. Our system of law does not permit jurors to be governed by prejudice or sympathy or public opinion. Both the parties and the public expect that you will carefully and impartially consider all of the evidence in the case, follow the law as stated by the Court, and reach a just verdict regardless of the consequences.

This case should be considered and decided by you as an action between persons of equal standing in the community, and holding the same or similar stations in life. A corporation is entitled to the same fair trial at your hands as is a private individual. The law is no respecter of persons, and all persons, including corporations, stand equal before the law and are to be dealt with as equals in a court of justice.

**SOURCE:**   DEVITT, BLACKMAR & WOLFF, FEDERAL JURY PRACTICE & INSTRUCTIONS § 71.04 & Appendix, Ch. 76 at 113.

GIVEN_____         GIVEN AS MODIFIED_____   REFUSED_____

_____
**UNITED STATES MAGISTRATE JUDGE**

**FORD'S REQUESTED INSTRUCTION NO. 3 (to precede all questions)**

In this case, the Plaintiff must prove every essential part of his claim by a preponderance of the evidence.

A preponderance of the evidence means the greater weight and degree of credible evidence admitted in this case.

In deciding whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the Plaintiff's claim by a preponderance of the evidence, you should find for the Defendant as to that claim.

**SOURCE:**   *See* Section 2.20, U.S. Fifth Circuit Pattern Jury Instructions; Texas Pattern Jury Charge 1.03.

GIVEN_____     GIVEN AS MODIFIED_____ REFUSED_____

_____

**UNITED STATES MAGISTRATE JUDGE**

**FORD'S REQUESTED INSTRUCTION NO. 4 (to precede all questions)**

In addition to denying that any alleged defective condition of the Ford F150 seat was a cause of any injury or damage to the Plaintiff, the Defendant alleges, as a further defense, that negligence on the part of Reynaldo Salinas, Jr., was the sole or, at a minimum, a concurring proximate cause of any injuries sustained in the accident.

There may be more than one proximate cause of an event, but if an act or omission of any person not a party to the suit was the "sole proximate cause" of an occurrence, then no act or omission of any other person could have been a proximate cause.

The burden is on a Defendant, alleging the defenses of sole proximate cause and comparative responsibility to establish, by a preponderance of the evidence in the case, the claim that Reynaldo Salinas, Jr. was at fault, and that such fault contributed as either the sole or a concurring proximate cause of any injuries and consequent damages which may have sustained.

SOURCE:   DEVITT, BLACKMAR & WOLFF, FEDERAL JURY PRACTICE & INSTRUCTIONS § 80.22, modified to submit settling tortfeasor under Ch. 33, TEX. CIV. PRAC. & REM. CODE.

GIVEN_____      GIVEN AS MODIFIED_____   REFUSED_____

_____
**UNITED STATES MAGISTRATE JUDGE**

**FORD'S REQUESTED INSTRUCTION NO. 5 (to precede all questions)**

The mere fact that an accident occurs does not mean that the product involved was defective or that the manufacturer is liable for resulting injuries.

**SOURCE:**   *See Henderson v. Ford Motor Company*, 519 S.W.2d 87, 93-94 (Tex. 1974); *USX Corporation v. Salinas*, 818 S.W.2d 473, 487 (Tex. App.—San Antonio 1991, no writ); EDGAR & SALES, TEXAS TORTS & REMEDIES § 41.01[2]; *see also Gates v. Ford Motor Company*, 494 F.2d 458, 459 (10th Cir. 1974) ("injury, of itself, is not proof of a defect and raises no presumption of defectiveness"); *Tauber v. Nissan Motor Corp., U.S.A.*, 671 F. Supp. 1070, 1073 (D. Md. 1987) (one's right to recovery may not rest on any presumption from the happening of an accident); *see also See Ford Motor Company v. Miles*, 967 S.W.2d 377, 386 (Tex. 1998) (a manufacturer is not required to design the safest possible product).

GIVEN_____          GIVEN AS MODIFIED_____   REFUSED_____

_____

**UNITED STATES MAGISTRATE JUDGE**

**FORD'S REQUESTED INSTRUCTION NO. 6 (definition of "producing cause")**

"Producing cause" means that cause which, in a natural sequence, was a substantial factor in bringing about an event, and without which the event would not have occurred.

**SOURCE:** *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex. 1985)("Cause in fact means that the defendant's act or omission was a substantial factor in bringing about the injury which would not otherwise have occurred. . . . Common to both proximate and producing cause is causation in fact, including the requirement that the defendant's conduct or product be a substantial factor in bringing about the plaintiff's injuries."). *See also Missouri Pac. R.R. Co. v. American Statesman*, 552 S.W.2d 99 (Tex. 1977) ("cause-in-fact as an element of proximate cause means that the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred"); *Texas Pacific Railway Company v. McCleery*, 418 S.W.2d 494 (Tex. 1967) ("The rule is known as the 'but for' rule.").

The definition of producing cause from the Texas PJC does not accurately state the law. It says that:

> 'Producing cause' means an efficient, exciting, or contributing cause that, in a natural sequence, produces the [*occurrence*][*injury*][*occurrence or injury*]. There may be more than one producing cause.

PJC 70.1. This does not tell the jury that the alleged cause must be a substantial factor in causing the injury. Nor does it tell them that without that cause the event would not have occurred -- the "but for" rule.

The only legal difference between proximate cause and producing cause is that the former includes the element of foreseeability. *Union Pump Co. v. Allbritton*, 898 S.W.2d at 775. Both require cause in fact. *Id.* Yet the definition of producing cause from the Texas PJC does not include *either* element of cause in fact: substantial factor *or* the "but for" rule.

What is more, the PJC definition is confusing and misleading. The simple fact is that no one -- not even a lawyer -- knows what an "efficient" or "exciting" cause is. The reported opinions consistently feel compelled to define "producing cause" using other words, even when describing the concept to lawyers and to other courts. Even those courts recognize that it does nothing helpful to define "producing cause" in the words we expect juries to find enlightening. It is time we used the same plain English that the courts and lawyers themselves use in communicating the concept.

GIVEN_____          GIVEN AS MODIFIED_____  REFUSED_____

_____
UNITED STATES MAGISTRATE JUDGE

**FORD'S REQUESTED INSTRUCTION NO. 7 (to accompany design defect question)**

Proof of a safer alternative design is necessary but is not sufficient to establish a design defect. For there to be a design defect, there must also be a condition of the product that renders it unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use.

**SOURCE:** *Hernandez v Tokai Corp.*, 2 S.W.3d 251 (Tex. 1999). That decision made clear that proof of a safer alternative design does not establish a design defect, although there cannot be a design defect without proof of a safer alternative design. In addition to showing a safer alternative design, establishing a design defect also requires proof that the product is unreasonably dangerous when its utility is balanced against its risk:

> proof of an available 'safer alternative design', as defined by statute, is necessary but not sufficient for liability; the claimant must also show that the product was unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use.

2 S.W.3d at 254-55. The court emphasized the point by repetition:

> proof of a safer alternative design under [Texas Civil Practice & Remedies Code] section 82.005 is necessary but not sufficient to maintain a defective-design claim. The claimant must also prove a design defect, which, under Texas common law, is a condition of the product that renders it 'unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use.'

2 S.W.3d at 258, *quoting Turner v General Motors Corp.*, 584 S.W.2d 844, 847 n.1 (Tex. 1979).

GIVEN_____     GIVEN AS MODIFIED_____ REFUSED_____

_____

**UNITED STATES MAGISTRATE JUDGE**

**FORD'S REQUESTED INSTRUCTION NO. 8 (to accompany design defect question)**

     How the defendant's design compares with other, competing designs is relevant to the issue of whether the defendant's design is defective.


**SOURCE:**        RESTATEMENT (THIRD) OF TORTS: PRODUCT LIABILITY § 2 cmt. d.


GIVEN_____     GIVEN AS MODIFIED_____  REFUSED_____


_____
**UNITED STATES MAGISTRATE JUDGE**

**FORD'S REQUESTED INSTRUCTION NO. 9 (to accompany design defect question)**

In determining whether a condition of the product renders it unreasonably dangerous as designed, you should consider the following factors:

1.  The utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use;

2.  The availability of a substitute product that would meet the same need and not be unsafe or unreasonably expensive;

3.  The manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs;

4.  The user's anticipated awareness of the dangers inherent in the product and their avoidability because of the general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions, and

5.  The expectations of the ordinary consumer.

**SOURCE:**   *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 256 (Tex. 1999).   In that decision, the court listed these factors as properly considered "in determining whether a defectively designed product is unreasonably dangerous." *Id.* The jury should be instructed on these factors when it is asked to determine whether either of the products at issue here contained such a design defect. *See also* EDGAR & SALES, TEXAS TORTS & REMEDIES § 41.03[3][b] (similar list); RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 cmt. f, at p.23 (1998) (similar list).


GIVEN_____     GIVEN AS MODIFIED_____   REFUSED_____


**UNITED STATES MAGISTRATE JUDGE**

**FORD'S REQUESTED INSTRUCTION NO. 10 (to accompany design defect question)(requested in the alternative, in the event the court does not submit Instruction No. 9)**

The factors relevant to determining whether the omission of a reasonable alternative design renders a product not reasonably safe include:

1. the magnitude of the foreseeable risks of harm;

2. the instructions and warnings that accompanied the product;

3. the nature and strength of consumer expectations regarding the product;

4. the relative advantages and disadvantages of the product as designed and as it alternatively could have been designed; and

5. the effects of the alternative design on production costs, product longevity, maintenance and repair, aesthetics and marketability.

SOURCE: RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 cmt. f; "To determine whether a reasonable alternative design exists, and if so whether its omission was unreasonably dangerous (or in the words of the new Restatement, not reasonably safe), the finder of fact may weigh various factors bearing on the risk and utility of the product." *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 335 (Tex. 1998).

GIVEN_____    GIVEN AS MODIFIED_____  REFUSED_____

_____
**UNITED STATES MAGISTRATE JUDGE**

# FORD'S REQUESTED INSTRUCTION NO. 11(alternative design)

When evaluating the reasonableness of a design alternative, the overall safety of the product must be considered. It is not sufficient that the alternative design would have reduced or prevented the harm suffered by a plaintiff if it would have also introduced into the product other dangers of equal or greater magnitude.

**SOURCE:**

This instruction tracks the holding of the Texas Supreme Court in *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 337 (Tex. 1998). That holding, essentially construing § 82.005, brought Texas in line with the new RESTATEMENT on product liability:

'When evaluating the reasonableness of a design alternative, the overall safety of the product must be considered. It is not sufficient that the alternative design would have reduced or prevented the harm suffered by the plaintiff if it would have also introduced into the product other dangers of equal or greater magnitude.'

977 S.W.2d at 337 (*quoting* RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 cmt. f (1998)). *See also Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 259 (Tex 1999) ("In *Caterpillar Co. v. Shears*, we held that a product that is safe for its intended use is not defectively designed merely because it is unsafe in other circumstances.").

As the new Restatement explains, "When evaluating the reasonableness of a design alternative, the overall safety of the product must be considered. It is not sufficient that the alternative design would have reduced or prevented the harm suffered by the plaintiff if it would have also introduced into the product other dangers of equal or greater magnitude." *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 337 (Tex. 1998), *quoting* RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 cmt. f; *see also Hernandez v. Tokai Corp.*, 2 S.W.3d 251 (Tex. 1999) ("In *Caterpillar Co. v. Shears*, we held that a product that is safe for its intended use is not defectively designed merely because it is unsafe in other circumstances."). *See also Crespo v. Chrysler Corp.*, No. 97 Civ. 8246 (JSR), 1999 U.S. Dist. LEXIS 17888 at *8 (S.D.N.Y. Nov. 19, 1999) ("This requirement that the alternative design be not only feasible but also safer for the relevant users is vital, for otherwise a plaintiff could recover simply by showing that a product could feasibly and without loss of utility be designed in such a way as to avoid injury to him alone even though the change would inflict injury on numerous others -- an absurd position."); *see also id.* at *7 n.7 (S.D.N.Y. Nov. 19, 1999) ("*Richards v. Michelin Tire Corp.*, 21 F.3d 1048, 1057 (11th Cir. 1994) (applying Alabama law) ('The fact that an alternative design existed which would have reduced or eliminated Appellant's injuries does not mean that the alternative

design was of greater overall safety.'); *Hull v. Eaton Corp.*, 263 U.S. App. D.C. 311, 825 F.2d 448, 454 (D.C. Cir. 1987) (applying Maryland law) ('[A] plaintiff must show that the magnitude of the danger from the product outweighed the costs of avoiding the danger – including, for example, any new dangers created and any reduction in the benefits of the product caused by the safer design.'); *Miller v. Todd*, 551 N.E.2d 1139, 1143 (Ind. 1990) (requiring a plaintiff 'to demonstrate that a feasible, safer, more practicable product design would have afforded better protection'); *Owens v. Allis-Chalmers Corp.*, 414 Mich. 413, 326 N.W.2d 372, 379 (Mich. 1982) (under Michigan law, prima facie case of design defect requires, inter alia, evidence concerning impact of alternative forklift design on 'operator's safety in other circumstances'). *See generally* James A. Henderson, Jr. & Aaron D. Twerski, *Arriving at Reasonable Alternative Design: The Reporters' Travelogue*, 30 U. MICH. J.L. REF. 563 (1997).").

GIVEN_____        GIVEN AS MODIFIED_____  REFUSED_____

_____
UNITED STATES MAGISTRATE JUDGE

**FORD'S REQUESTED INSTRUCTION NO. 12 (to precede design questions)**

In a case involving a claim that the vehicle was not crashworthy, proof of defect does not, of itself, establish a case of increased injury. The plaintiff must also establish that the defect was a substantial factor in increasing the plaintiff's harm beyond the harm that would have occurred as a result of non-defect-related causes.

SOURCE:

      RESTATEMENT (THIRD) OF TORTS:   PRODUCTS LIABILITY § 16 cmt. b, *Increased Harm Due to Product Defect.*

GIVEN_____          GIVEN AS MODIFIED_____ REFUSED_____

                                          _____
                                          **UNITED STATES MAGISTRATE JUDGE**

**FORD'S REQUESTED INSTRUCTION NO. 13 (to precede design questions)**

Proof of defect does not, of itself, establish a case of increased harm.

SOURCE:    RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 16 cmt. b, illus. 5.
*See Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328 (Tex. 1998)
("Once a feasible alternative design was shown, however, the question remained
whether the rim as designed was unreasonably dangerous," *citing* RESTATEMENT
(THIRD) OF TORTS: PRODUCTS LIABILITY § 2(b) (product is defective in design
when risks could have been reduced by adoption of reasonable alternative
design *and* omission of the alternative design renders the product not reasonably
safe.))

GIVEN_____    GIVEN AS MODIFIED_____ REFUSED_____

_____
**UNITED STATES MAGISTRATE JUDGE**

**FORD'S REQUESTED INSTRUCTION NO. 14 (to precede damage questions)**

      If the Plaintiff proves his claim against the Defendant by a preponderance of the evidence, you must determine the damages to which the Plaintiff is entitled. You should not interpret the fact that I have given instructions about the Plaintiff's damages as an indication in any way that I believe that the Plaintiff should, or should not, win this case. It is your task first to decide whether the Defendant is liable. I am instructing you on damages only so that you will have guidance in the event you decide that the Defendant is liable and that the Plaintiff is entitled to recover money from the Defendant.

GIVEN_____     GIVEN AS MODIFIED_____  REFUSED_____

                                       _____
                                       **UNITED STATES MAGISTRATE JUDGE**

**FORD'S REQUESTED INSTRUCTION NO. 15 (to precede damage questions)**

The Ford vehicle did not cause the accident. Ford Motor Company may be liable only for the increased damages caused by the alleged defect. The person alleging the defect has the burden of proving the amount and extent of the increased damages caused by the alleged defect. Therefore, you must first determine the total of all damages actually suffered by the Plaintiff as a result of the accident. You will then have to determine the damages, if any, that the Plaintiff would have suffered as a result of the accident had Ford Motor Company adopted the proposed alternative design. If the Plaintiff would have sustained injuries and damages of equal or greater severity even with the proposed alternative design, you must find that the alleged defect did not cause injury or damage to the plaintiff.

SOURCE:     Restatement (Third) of Torts: Products Liability §§ 16(a) and (b).

GIVEN_____     GIVEN AS MODIFIED_____ REFUSED_____

_____

**UNITED STATES MAGISTRATE JUDGE**

**FORD'S REQUESTED INSTRUCTION NO. 16 (to precede design questions)**

In a case involving a claim that the vehicle was not crashworthy, proof of defect does not, of itself, establish a case of increased injury. The plaintiff must also establish that the defect was a substantial factor in increasing the plaintiff's harm beyond the harm that would have occurred as a result of non-defect-related causes.

SOURCE:

RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 16 cmt. b, *Increased Harm Due to Product Defect.*

GIVEN_____     GIVEN AS MODIFIED_____ REFUSED_____

_____
**UNITED STATES MAGISTRATE JUDGE**

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.


By: _____
          Jaime A. Saenz
          Attorney-in-Charge
          State Bar No. 17514859
          Federal Admissions No. 7630
          Alison Kennamer
          State Bar No. 11280400
          Federal Admissions No. 12023
          1201 East Van Buren
          P.O. Box 2155
          Brownsville, Texas 78522
          (956) 542-7441
          (956) 541-2170 (fax)

          ATTORNEYS FOR DEFENDANT
          FORD MOTOR COMPANY